## SZATYNSKI *v.* SZATYNSKI.

1. DIVORCE—MISCONDUCT OF HUSBAND—DIVISION OF PROPERTY.
   In adjusting property rights under a decree of divorce between parties about 65 years of age, it is not overlooked that defendant husband's misconduct was the cause of the breaking up of the family.

2. HUSBAND AND WIFE—OBLIGATION OF HUSBAND.
   A husband has the obligation of furnishing, to the extent of his ability, a home and other needs of the wife.

3. DIVORCE—DIVISION OF PROPERTY—SECURITY OF LIVING FOR WIFE.
   There is no rigid rule of division of property in divorce actions and the security of living for the wife is a major consideration.

4. SAME—DIVISION OF PROPERTY—MODIFICATION OF DECREE.
   Decree of divorce between parties 65 years of age ordering sale of the jointly-owned farm property and stock and equipment thereon, which had been the home of the parties for some 13 years before separation, and equal division of proceeds between the parties, is modified to award it to wife in lieu of dower and alimony but subject to $1,200 lien in

REFERENCES FOR POINTS IN HEADNOTES
[1-4] 17 Am Jur, Divorce and Separation, § 445.

favor of husband where, taking all properties separately owned by the parties also into consideration and need of home for wife, such modified arrangement effects an equitable disposition of the property and provides a home for her.

5. Same—Recording of Decree.

In event of failure of parties to suit for divorce to execute conveyances carrying into execution the provisions of decree of divorce, a certified copy of such decree may be recorded to effect disposition of property rights ordered.

6. Same—Attorneys' Fees—Appraisers' Fees.

Upon modification of decree as to property rights, case is remanded for determination of attorneys' fees for counsel now representing the parties and imposition of lien upon property involved for payment thereof, but each party is ordered to pay $25 into court for appraisers' fees and clerk ordered to pay equal amounts thereof to respective appraisers.

7. Same—Costs—Modification of Decree.

No costs are allowed upon modification of property rights on wife's appeal from decree of divorce in view of disposition made.

Appeal from Washtenaw; Breakey (James R., Jr.), J. Submitted April 5, 1950. (Docket No. 16, Calendar No. 44,697.) Decided May 18, 1950.

Bill by Frances Szatynski against Joseph Szatynski for divorce on ground of extreme and repeated cruelty. From decree for plaintiff, she appeals as to property provisions. Modified and remanded.

*Morry M. Fenton (William J. Weinstein,* of counsel), for plaintiff.

*John P. Kirk (William G. Lerchen, Jr.,* of counsel), for defendant.

North, J. Plaintiff obtained a decree of divorce from defendant. A property settlement was pro-

SZATYNSKI *v.* SZATYNSKI.

vided in the decree. This appeal by plaintiff concerns only the property settlement.

The marriage occurred in 1914. The parties then and until 1925 resided in Connecticut. The decree was entered in January, 1949, which was more than 3 years after the hearing and the filing of the trial judge's opinion. Four sons were born of the marriage, the youngest of them being approximately 21 years of age at the time the decree was entered. Defendant left the farm home in June, 1944. In the opinion filed by the circuit judge it is noted that these litigants both spoke "broken English which fact, together with evasive answers given by each on the stand" made the trial and disposition of the case difficult. As nearly as can be ascertained from such a record as has been made, the property aspect of the case is substantially as follows.

At the time of the marriage defendant husband was possessed of $800, and plaintiff had about $2,200. She inherited about $500 more within a few years after the marriage; and it fairly appears that during two seasons plaintiff, in Connecticut, by peddling with a horse and wagon earned approximately $1,000. Thereafter, in 1925, these parties spent approximately 8 months on a road trip, by way of Texas, to California. At that time plaintiff left on deposit in her name $4,000 in a Milford, Connecticut, bank. At least a part of this fund was withdrawn and deposited in a California bank. Some money was lost by defendant in business ventures while in California. In 1930, they came to Detroit. In April, 1931, they bought a 67½-acre farm in Washtenaw county, which since has been the family home and is the principal item in this property settlement controversy. Title to the farm was taken in the joint name of the parties. The purchase price was $4,000 or $4,500. Plaintiff testified that the down payment of $2,200 was made with her own money; but in en-

tering his decree the trial judge determined plaintiff, from her own funds, paid on the purchase price of the farm $2,078.74. At the time of the hearing this property was mortgaged for $800; but at the time the decree was settled and entered, more than 3 years later, the trial judge determined the amount unpaid on the mortgage was $600.

Plaintiff testified that while the family lived on the farm her husband, prior to his leaving the home in June, 1944, was guilty of extreme cruelty; that he used intoxicating beverages excessively; that he assaulted her; that he did little work and he was either lazy or sick. But there can be little doubt that both of these litigants and their growing sons, prior to the time defendant left the home, all had contributed to the family upkeep and to the accumulation of property. Besides caring for the household, plaintiff raised poultry and worked in the fields. The trial judge specifically found that prior to his leaving the home: "Defendant supported the growing family." At the time of the hearing herein (1945), an inventory by 2 appraisers fixed the value of the farm and equipment thereon at $7,347.50. Aside from household effects, the other property of the parties consists of the following: Plaintiff owns a lot in California which was purchased for $600. Defendant has real estate, referred to as the Trenton property, for which, according to his testimony, he paid $1,500. He also has a paid-up insurance policy which has a cash surrender value of $422.39. There were some other rather inconsequential items of property and circumstances bearing upon the financial status of these parties at the time the decree was entered which we think have little, if any, bearing upon the present controverted issue of property settlement. At the time the decree was entered each of these parties was approximately 65 years of age. Defendant was employed at a hospital where

he earned about $30 per week, and lodging. There is testimony that plaintiff's physical condition is somewhat impaired, but with the assistance of her sons she has operated the farm since defendant left the home in 1944.

From the foregoing it is apparent that at the time this case was before the trial court the total property holdings of these parties was between $9,000 and $10,000. The main items making up this total are the farm, livestock and equipment thereon, appraised at $7,347.50; plaintiff's California lot at $600; defendant's Trenton property at $1,500, and the cash surrender value of his paid-up insurance at $422.39.

In adjusting their property rights it cannot be overlooked that the breaking up of this family has been adjudicated to have been caused by defendant's misconduct. And further, because of his marital obligation, the duty is upon defendant husband to furnish to the extent of his ability a home and other needs for plaintiff.

"There is no rigid rule of division of property in divorce actions 'and the security of a living for the wife is a major consideration.'" *Hallett* v. *Hallett,* 279 Mich 246.

On review of a case of this character we are hesitant to depart from provisions made by the trial judge, who heard and saw the parties and their witnesses, as to custody of children or adjustment of property rights. But in the instant case we think it would be impractical, and somewhat inequitable to plaintiff, to affirm the property settlement aspect of the trial court's decree. This is true because the decree entered in the circuit court required that the farm property and the stock and equipment thereon be sold at auction by a circuit court commissioner and the proceeds, after certain deductions specified

including payment or adjustment of attorneys' fees and appraisers' fees (some portions of which have already been paid), divided equally between the parties. This would leave plaintiff, now well advanced in years, without a home, a circumstance which we think should be avoided in adjustments of this character if equitably possible. Without further reference to the details of the decree entered in the lower court, we are constrained to provide for a modified decree as hereinafter indicated.

At the time the case was before the trial court the facts which have the major bearing upon what should constitute an equitable property settlement between these parties are as follows: The appraised value of the jointly-owned property—i.e., the farm, the equipment and livestock thereon, is $7,347.50, the farm being subject to a $600 mortgage. Plaintiff paid from her own funds toward the purchase price of the farm $2,078.74. Deducting plaintiff's payment from her personal funds, and also the $600 mortgage, it appears that as between these parties litigant in an equitable sense their property held jointly is of the value of $4,668.76.

In addition to the jointly-held property these parties have in their respective individual rights the following. Plaintiff owns the California lot of the value of $600. Defendant in his own right has property of the value of $1,922.39, consisting of the Trenton real estate for which he paid $1,500, and the cash surrender value of paid-up insurance amounting to $422.39. Thus it appears that, disregarding some inconsequential property items, the total value of property owned by both parties should be considered as amounting to approximately $9,269.89. Our review of this record brings the conclusion that an equitable adjustment of the parties' property rights will be accomplished by a decree providing as follows:

Title to the farm, the farm equipment and live-stock thereon, and also the household goods, shall be vested in plaintiff as her sole property. This provision shall be in lieu of and in full satisfaction of all dower rights in any property of defendant now or hereafter owned, and also in full satisfaction of any and all claims plaintiff might otherwise have for alimony.

Plaintiff shall also continue to own as her individual property the California lot purchased by her.

Defendant shall have as his sole property the Trenton real estate and all rights of ownership in his paid-up insurance; and

Defendant shall have a lien upon the farm property for the payment to him by plaintiff of $1,200, payable as follows: $200 on or before 6 months from the entry of decree herein; $500 on or before $1\frac{1}{2}$ years after the entry of said decree; and $500 on or before $2\frac{1}{2}$ years after the entry of said decree. The respective sums to be paid defendant shall bear interest at the rate of 5 per cent. per annum from the date of the decree until payment is made; and in event of default in the payment of any of said instalments at a time when same is due, defendant may at his option declare the whole amount unpaid as due and payable forthwith, and enforce payment by foreclosure as in the case of defaulted real estate mortgages.

The decree to be entered in this Court may provide that each of the parties litigant shall execute and deliver to the opposite party the requisite instruments to carry into execution the above provisions affecting property rights. In event either party refuses or neglects so to do, a certified copy of the decree may be recorded and thereby its provisions affecting property rights made effective as of record.

Attorneys' fees and appraisers' fees: The circuit court decree reserved the right to the trial court to make a further order as to the attorneys' fees of present counsel. By our decree the case will be remanded to the trial court with power to make such further order for attorneys' fees for counsel now representing the respective parties, and to constitute the same a lien upon any property or property rights herein awarded to the obligated party. Each of the parties shall be decreed to pay to the clerk of the circuit court $25 in satisfaction of appraisers' fees. The money when so received by the clerk shall be paid by him in equal amounts to the respective appraisers.

In view of our disposition of property rights herein involved, costs will not be awarded to either party.

BOYLES, C. J., and REID, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.