## ACKERMAN v. ACKERMAN.

1. DIVORCE—DIVISION OF PROPERTY.

The division of property in a suit for divorce is not governed by any rigid rules, except that the distribution must be equitable, the facts and circumstances of each case being different.

2. SAME—DIVISION OF PROPERTY—DISCRETION OF COURT.

The Court of Appeals does not substitute its judgment as to the division of property in a suit for divorce for that of the trial judge unless it is evident that there is a clear abuse of discretion.

3. SAME—DIVISION OF PROPERTY—EVIDENCE.

Division of property by trial judge in divorce action which gave wife about half of the property, held, not an abuse of discretion, where evidence as to the contribution of both parties is conflicting, and the records and accounts were in the control of the wife, who was unable or unwilling to give an adequate account of her financial contribution to the marriage.

4. SAME—PURPOSE OF ALIMONY.

Alimony is an incident of marriage and is based on the underlying principle that it is the duty of the husband to support his wife, not necessarily endow her; signifying pri-

REFERENCES FOR POINTS IN HEADNOTES

[1] 24 Am Jur 2d, Divorce and Separation §§ 925, 933.
[2] 24 Am Jur 2d, Divorce and Separation § 933.
[3] 24 Am Jur 2d, Divorce and Separation §§ 337, 540, 541, 662, 925, 933.
[4] 24 Am Jur 2d, Divorce and Separation §§ 514, 524.
[5] 24 Am Jur 2d, Divorce and Separation §§ 514, 524, 600.
[6] 24 Am Jur 2d, Divorce and Separation §§ 600, 601, 610, 611, 618, 620, 630, 631, 633, 636.
[7, 9] 24 Am Jur 2d, Divorce and Separation §§ 352, 353.
    39 Am Jur, New Trial §§ 156–176, 201.
[8] 39 Am Jur, New Trial §§ 156–176.
[10] 20 Am Jur 2d, Costs § 15.
    24 Am Jur 2d, Divorce and Separation §§ 571, 584, 591, 592.

marily an allowance or allotment adjudged against him for her subsistence, according to his means and their condition in life during their separation, whether it be for life or for years.

5. SAME—MARITAL RIGHT TO SUPPORT.

A wife should not be deprived of her marital right of support to which she would be entitled except for her husband's misconduct which caused the divorce.

6. SAME—ALIMONY.

Denial of alimony to wife in divorce action where the marital property was equally divided *held*, error, considering her age and poor health, the fact that the husband was the guilty party in the proceeding, and the fact that no income-producing property was awarded to the wife.

7. APPEAL AND ERROR—MOTION FOR NEW TRIAL—DISCRETION OF COURT.

Denial of trial court of additional time to permit defendant wife a hearing on her motion for new trial in a divorce action *held*, not an abuse of discretion, where a lengthy trial was held, defendant was given 2 weeks' additional time before entry of judgment to make her motion, and when time expired neither defendant nor her counsel appeared.

8. NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

To entitle one to a new trial upon the ground of newly-discovered evidence, it should be shown (1) that the evidence, and not merely its materiality, is newly discovered, (2) that the evidence is not merely cumulative, (3) the evidence must be such as to render a different result probable on new trial, and (4) it must be shown that the evidence could not have been discovered before or during trial by the exercise of reasonable diligence.

9. SAME — DIVORCE — NEWLY-DISCOVERED EVIDENCE — DISCRETION OF COURT.

Denial of motion for new trial of defendant wife in divorce action on ground of newly-discovered evidence *held*, proper, where the defendant has had almost uninterrupted possession of the financial records of the marriage, and the motion merely states there is new evidence, without indicating the nature or extent of the evidence, or when it was discovered.

10. DIVORCE—COSTS.

No costs are allowed on wife's appeal in action for divorce, where neither party has prevailed in the entirety.

Appeal from Saginaw; O'Neill (James E.), J. Submitted Division 3 June 2, 1966, at Grand Rapids. (Docket No. 466.)  Decided December 8, 1966.

Complaint for divorce by William T. Ackerman against Madeline Ackerman.  Judgment for absolute divorce granted on amended cross complaint.  Motion for new trial denied.  Defendant appeals as to property settlement.  Modified and affirmed.

*Martin & Martin* (*Walter Martin,* of counsel), for plaintiff.

*Bauer, Smith, Bovill & Joseph* (*Albert A. Smith,* of counsel), for defendant.

HOLBROOK, P. J.  February 3, 1964, defendant wife was granted a judgment of absolute divorce on her amended cross bill, and neither party complains about this part of the judgment.  Rather, the controversy concerns the division of property.

William and Madeline Ackerman, both having been previously married and divorced, were married on April 26, 1952, and were separated on or about April 1, 1959.  No children were born of this marriage.  Mrs. Ackerman, formerly Madeline Affendikis, for several years both before and after her marriage to William Ackerman operated a combination rooming house and restaurant in the city of Detroit.  Immediately after the marriage the parties moved into a house located in Southfield, Michigan. The down payment on this home was paid by Mrs. Ackerman.  In 1954, Mr. Ackerman obtained employment in Bridgeport, Michigan.  Because of her business in Detroit, Mrs. Ackerman could not move to Bridgeport immediately, so Mr. Ackerman spent his weekdays in Bridgeport and his weekends in Detroit.  It was decided that Mrs. Ackerman should

give up her Detroit business and move into a new home in Frankenmuth, Michigan, so that Mr. Ackerman could remain close to his work. This move was finally accomplished in 1955. Life in Frankenmuth degenerated in successive stages from the initial moments of marital bliss into a period of peaceful coexistence and finally open warfare; the last stage being characterized by allegations of a concealed knife on the part of Mrs. Ackerman and a concealed girl friend on the part of Mr. Ackerman. Both of the aforementioned concealed entities inevitably came into the open, causing a good deal of friction between the parties. The end result of this marriage is that the parties lived together in relative harmony for the first seven years and have been in court for the better part of the last seven years.

Mr. Ackerman filed a bill of complaint for divorce on January 21, 1960, alleging extreme cruelty on the part of the defendant. Defendant countered by filing a petition for support during the pendency of the suit and a cross-bill for separate maintenance. By order of February 8, 1960, the trial court awarded temporary alimony in the amount of $50 per week and further ordered plaintiff to pay the monthly mortgage payment of $102 on the home occupied by defendant. The order for temporary alimony was limited to six months, but subsequently was extended to one year. After the one-year period, the amount was reduced by the court to $25 per week, and finally, on April 23, 1962, all temporary alimony was terminated.

On August 29, 1961, the defendant moved to amend her cross-bill to one for absolute divorce. Leave to amend was granted, and upon stipulation of the parties the plaintiff withdrew his complaint and defendant was allowed to proceed on her amended cross-bill for absolute divorce.

The trial of this cause commenced on February 9, 1961, and the final testimony was not taken until December 27, 1962. During this period, 14 full trial days were consumed submitting proofs. Because of the aforementioned stipulation, very little dealt with the issue of whether either party was entitled to a divorce. The bulk of the testimony was directed toward the issue of property distribution.

At the time of this marriage, Mr. Ackerman was associated with the Quint-Alloy Corporation. On March 21, 1953, he sold out his interest in this organization for $6,000; the terms of the sale being $2,000 in cash and the balance to be paid in monthly installments of $335. It is conceded that this was the extent of his assets at the time of the marriage. Thereafter, Mr. Ackerman worked as a commission salesman for several different business firms in and around the city of Detroit, earning approximately $100 per week.

In 1954, Mr. Ackerman became a stockholder in two corporations and also became a partner in another business concern, all located in Bridgeport, Michigan. The total investment in all three enterprises was $10,000, which was not fully paid until 1958. One of the stockholder-partners withdrew in 1960, and in the same year the partnership was incorporated. Of the stock now outstanding in the three firms, Mr. Ackerman holds 22% of Bay Engineering, Inc., 33 1/3% of Argus Realty, Inc., and 28% of Revere Engineering, Inc.

Mr. Ackerman testified that his total weekly draw from the three firms was $150, which was always deposited in a household account by Mrs. Ackerman. In addition, there were accrued earnings in the corporations which were not paid out. In the course of his employment, Mr. Ackerman found it necessary to use his own automobile and for this he was reimbursed. In 1960, Mr. Ackerman's weekly draw was

raised to $175. The total income of Mr. Ackerman as contained in his income tax returns during the years of the marriage was as follows:

| | |
|---|---:|
| 1952 | $ 7,207.08 |
| 1953 | 6,984.07 |
| 1954 | 6,727.11 |
| 1955 | 9,865.29 |
| 1956 | 11,709.70 |
| 1957 | 6,703.20 |
| 1958 | 9,527.83 |
| 1959 | 9,641.84 |
| 1960 | 14,073.59 |
| | $82,439.71 |
| Sale of Quint-Alloy stock: | 6,000.00 |
| | $88,439.71 |
| Cashed in insurance policies: | 1,832.29 |
| Total | $90,272.00 |

During the years of the marriage, Mr. Ackerman invested in several unsuccessful business ventures. The following quotation from the record indicates that they are of no great concern on this appeal.

"*By Mr. Martin.* All right. We will also eliminate all of the oil wells. We will eliminate Hercules, Sarnoil, any of the others. If your client thinks there is any value in any of these companies, we will assign our right, title and interest to her. We are doing this, Your Honor, to get down to the real assets in this case.

"*By Mr. Sternberg.* You are offering Sarnoil, Mr. Martin?

"*By Mr. Martin.* Yes, and Hercules, Carpac—

"*By Mr. Sternberg.* Polade?

"*By Mr. Martin.* We have already offered that. To make it plain, we offer at this time to assign over to the defendant all of our interest in these oil wells, Number 1 and Number 2; all our interest in

Polade, about which there has been considerable; all our interest in Sarnoil, Hercules, Carpac, Electro-Tork. You name it, Mr. Sternberg, and we will assign it. We are contending throughout here that the assets involved here are the house, the household furniture, Your Honor, and some interest in Revere—

"*A.* Yes, sir."

The valuation of the stock held by Mr. Ackerman in the Argus, Bay, and Revere Corporations has been the subject of much dispute. A certified public accountant testifying on behalf of the defendant estimated the minimum and maximum values at $25,000 and $47,000 respectively. These figures were based on so-called book value: the minimum figure was the cost of assets minus depreciation and the maximum value was the market value of the assets. J. Richard Kendrick, testifying on behalf of plaintiff, estimated the maximum value of plaintiff's interest at $10,000. This figure was an estimate of the amount that a ready and able buyer would have been willing to pay Mr. Ackerman for his interest. Reflected in this estimate is the fact that all of the assets of Argus Realty and Bay Engineering are covered by mortgages held by one Mr. Ison in the respective amounts of $25,000 and $20,000. The mortgage agreements provide that a deceased or withdrawing shareholder cannot be paid until the mortgages are paid in full.

Turning to the assets contributed by Mrs. Ackerman, utter confusion reigns supreme. Although this case was in circuit court from January, 1960, until February, 1964, more than four years, Mrs. Ackerman never made an accounting of how much she contributed or where it was spent. This is in spite of the fact that Mrs. Ackerman and her attorneys were at all times in possession of the financial records growing out of this ill-fated marriage.

The chief asset held by Mrs. Ackerman at the time of the marriage was the restaurant and rooming house property in Detroit. It was sold three times and, due to defaults on the first two sales, dutifully returned to Mrs. Ackerman twice in the manner of the proverbial bad penny. It was sold for the last time in 1958, and at that time, Mrs. Ackerman received $17,500. $15,000 of this amount was deposited in the bank. Of this $15,000, approximately $10,000 can be traced. $4,000 went toward the purchase of Mr. Ackerman's stock and $6,000 went to Mrs. Ackerman's children. Out of the $6,000 figure, $3,000 was allegedly in payment of a debt owing to one daughter, but the other $3,000 was an outright gift. The defendant never produced any evidence of the alleged debt.

According to the income tax returns received in evidence, the following figures represent the profits and losses from the Detroit property during the stated years.

| | |
|---|---|
| 1952 | $ 937.26 |
| 1953 | (820.19) |
| 1954 | 289.55 |
| 1955 | (604.59) |
| 1956 | (3,227.02) |
| 1957 (1 mo.) | (918.97) |
| 1958 | (2,051.82) |
| | |
| NET LOSS | $(6,395.78) |

In addition, there was evidence tending to show that over this period of years, Mr. Ackerman spent approximately $13,162.02 on the Detroit property.

The trial court in its judgment of divorce made the following disposition of property. The wife received household furniture she had acquired prior to marriage; the equity in the home and the remaining furniture were divided equally between the par-

ties; the plaintiff was ordered to pay defendant $4,100 which defendant had advanced to plaintiff to purchase stock in the business by which he is now employed; the defendant was awarded no permanent alimony; each party was awarded his or her own car; plaintiff was awarded his personal belongings valued at approximately $2,500; and plaintiff was ordered to pay defendant's attorney $750.

During the marriage of these parties, Mrs. Ackerman contracted glaucoma, an eye affliction which requires daily medication. It also appears from the record that one of the delays in the trial of this suit came about because Mrs. Ackerman had to enter a hospital for an operation on her back. In spite of this disability she is at present operating another restaurant in the city of Detroit which, from her unsubstantiated testimony, is not doing well.

Mrs. Ackerman made a motion for new trial alleging newly-discovered evidence and maintaining that the decision of the court was against the great weight of the evidence. On the date set for entry of judgment, she appeared without counsel and obtained a two-week adjournment. On the adjourned date set for the hearing, neither Mrs. Ackerman nor her attorney appeared in court. The trial judge ordered the entry of the judgment, and in so doing made the following remarks.

"Let the record show the trial of this cause commenced in February, 1961, and was not concluded until in December of 1962 or January of 1963, and, as indicated in the opinion of the court, it should have taken no more than 5 days to put in the proofs, and there never was a proper accounting offered by the defendant in this case. She repeated over and over again testimony as to certain items that were deposited and withdrawn, and deposited and withdrawn, and, of course, you can build up a lot of money by adding the same amount of money every

time you deposit it, then withdraw it, then redeposit it. I was never satisfied we had a proper accounting, and there is no good reason, as far as I can see, for trying this matter any further, so for that reason I feel the defendant has been accorded all of the rights she is entitled to. She has been obdurate in making this matter continue as long as possible. For that reason I don't think it is an abuse of discretion to proceed to get this matter out of the way this afternoon."

The judgment was entered and the motion for new trial was denied. Defendant appeals, and raises the following questions for review: (1) Did the lower court make an equitable distribution of the property? (2) Should the court have awarded permanent alimony? (3) Did the lower court abuse its discretion by not allowing additional time for a hearing on defendant's motion for a new trial?

Did the lower court make an equitable distribution of the property?

Because the facts and circumstances of each case involving a divorce are different, there are no rigid rules governing the division of property. *Cartwright* v. *Cartwright* (1954), 341 Mich 68; *Fansler* v. *Fansler* (1956), 344 Mich 569; *Johnson* v. *Johnson* (1956), 346 Mich 418; *Piersante* v. *Piersante* (1960); 359 Mich 173. The only requisite is that the distribution must be equitable. *DeMay* v. *DeMay* (1949), 326 Mich 72; *Fansler* v. *Fansler* (1956), 344 Mich 569; *Greenough* v. *Greenough* (1958), 354 Mich 508. Further, in a suit for divorce this Court will not substitute its judgment for that of the trial judge unless it is evident that there is a clear abuse of discretion. *Cooley* v. *Cooley* (1948), 320 Mich 209.

In the present case the trial judge made an almost equal distribution of the property. During the course of the trial there were many charges and

countercharges as to who contributed how much to this marriage and where it went. Certainly, these people did not plan on a divorce at the time of their marriage in 1952. Working on the assumption that this marriage would not ultimately come to an untimely demise, neither spouse maintained a running account of the cost of this marriage in terms of profit and loss. On the contrary, funds were freely intermingled and frequently transferred back and forth between numerous bank accounts maintained by the parties. Of the records which were kept, however, Mrs. Ackerman maintained complete control. Even so, she was unable, or unwilling, to give any kind of an account of her contribution to this marriage.

With respect to the stock held by Mr. Ackerman in the business by which he was employed, Mrs. Ackerman claims that she should receive part of that. However, all three of these enterprises are closed corporations; those who own stock are all directly involved in the day-to-day operations of the business. Indeed, Mr. Ackerman was allowed to purchase stock not because of the money involved, but rather because the corporation needed his sales ability. Under these circumstances it would be highly unfair to other shareholders to award Mrs. Ackerman a part of the stock since she has absolutely nothing to contribute toward the successful operation of the business. Secondly, an order requiring Mr. Ackerman to sell a portion of his shares and pay the proceeds over to Mrs. Ackerman would have been useless because of the mortgage covering the assets of two of the corporations. The third corporation is a sales corporation and thus has no assets. By virtue of the mortgage agreement, nothing can be paid out until the mortgages are paid.

From the evidence in the record, we conclude that the lower court did not abuse its discretion in making

its division of the property. During the course of
this lengthy trial, the judge on several occasions
came near to total exasperation, but on the whole,
despite extremely provoking circumstances, he ex-
hibited a degree of patience which few men possess.

Should the court have awarded permanent ali-
mony?

"Alimony    *    *    *    is an incident of marriage,
and based on the underlying principle that it is the
duty of the husband to support his wife, not neces-
sarily to endow her. Primarily it signifies, not a
certain portion of his estate, but an allowance or
allotment adjudged against him for her subsistence,
according to his means and their condition in life
during their separation, whether it be for life or for
years." *Bialy* v. *Bialy* (1911), 167 Mich 559, 565,
566 (Ann Cas 1913A, 800). Quoted with approval
in *Johnson* v. *Johnson* (1956), 346 Mich 418, 428.

These parties lived together in excess of seven
years, and the wife was granted a divorce because
of her husband's cruelty. At the present time Mrs.
Ackerman is approximately 53 years of age. It is
notable that the decree of the trial court did not
award income-producing property to the defendant.
The property she did receive will be exhausted with-
in a short period of years simply by virtue of the
day-to-day expenses of living. It is true that Mrs.
Ackerman is again engaged in the restaurant busi-
ness, but in view of her past lack of success in that
endeavor and her present ill health, it is problemat-
ical whether she will be able to support herself.

After considering these various factors, *i.e.,* de-
fendant's age and health, the fact that plaintiff is
the guilty party in this divorce proceeding, and the
fact that no income-producing property was award-
ed to defendant, the most persistent conclusion is
that an award of alimony should have been made.

The wife should not be deprived of her marital right of support to which she would be entitled but for the husband's misconduct which resulted in this divorce. *Johnson* v. *Johnson* (1956), 346 Mich 418.

We conclude that under the circumstances, alimony at the rate of $100 per month should have been awarded to defendant wife, to be paid by the plaintiff. We so order.

Did the court abuse its discretion by not allowing additional time for a hearing on defendant's motion for a new trial, or a new trial?

The basis for the motion is that the decree was against the weight of the evidence because permanent alimony was not awarded and that there is newly-discovered evidence.

This litigation consumed 14 trial days over a period of three years. When this case finally came up for entry of judgment, defendant asked for a two-week adjournment. The request was granted. When the two-week period expired and defendant should have been back in court, neither she nor her attorney appeared. Considering the extreme length of this trial and defendant's unexplained failure to appear on the appointed date, the trial judge did not abuse his discretion.

There is also the question of newly-discovered evidence. To be entitled to a new trial on the basis of newly-discovered evidence, four conditions must be satisfied: (1) The evidence and not merely its materiality must be newly-discovered, (2) the evidence must not be merely cumulative, (3) the evidence must be such as to render a different result probable on new trial, and (4) it must be shown that the evidence could not have been discovered before or during trial by the exercise of reasonable diligence. *Attorney General, ex rel. Commissioner of Insurance,* v. *Lapeer Farmers' Mutual Fire Insurance Association* (1950), 327 Mich 333, 340.

The defendant, now claiming the discovery of new evidence, has had almost uninterrupted possession of the financial records of this marriage. Moreover, the motion for new trial and affidavit in support thereof are singularly lacking in the four requirements set forth. The motion simply says that there is new evidence. There is no indication of the nature or extent of the evidence, nor when it was discovered.

As modified by this opinion as to alimony, the decree of the circuit court is affirmed. No costs, neither party prevailing in the entirety.

BURNS and HOFFIUS, JJ., concurred.