SPARKS v SPARKS

Docket No. 90300. Argued January 7, 1992 (Calendar No. 5). Decided June 30, 1992.

Marilyn F. Sparks brought an action for divorce in the Muskegon Circuit Court against Clement Sparks, Jr. The court, Ronald H. Pannucci, J., found that the plaintiff's infidelity and her desire to get out of the marriage caused its breakdown and awarded seventy-five percent of the property to the defendant and twenty-five percent to the plaintiff. The Court of Appeals, CAVANAGH, P.J., and MCDONALD, J. (MARILYN J. KELLY, J., dissenting), affirmed in part the distribution of assets in an unpublished opinion per curiam (Docket No. 110535). The plaintiff appeals.

In an opinion by Chief Justice CAVANAGH, joined by Justices BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, the Supreme Court *held:*

In an action for divorce, marital misconduct is only one of several relevant factors that the trial court must consider to reach an equitable division of marital property. In this case, the award was inequitable because disproportionate weight was ascribed to fault.

1. In a divorce case, the appellate court must first review the trial court's findings of fact under the clearly erroneous standard. If the findings are upheld, it must decide whether the dispositive ruling was fair and equitable in light of those facts. The ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable.

2. There is no indication that the Legislature, in providing for no-fault divorce in 1971, intended to affect the factors relevant in awarding property division. Rather, by failing to

REFERENCES

Am Jur 2d, Divorce and Separation §§ 915 *et seq.*

Spouse's dissipation of marital assets prior to divorce as factor in divorce court's determination of property division. 41 ALR4th 416.

Divorce and separation: effect of trial court giving consideration to needs of children in making property division—modern status. 19 ALR4th 239.

alter the statutory provision regarding property division, the Legislature intended to retain the traditional factors when fashioning a property settlement. Thus, the trial court must fashion a division of property under the statutory scheme and the relevant case law as they existed before the 1971 amendment of the divorce act. The Legislature is presumed to have known that the courts had delineated several factors to be considered, including the conduct of the parties during the marriage, and thus had acquiesced in that construction.

3. Fault remains a relevant factor in the determination of a property settlement, but it is not the only factor. The conduct of the parties during the marriage may be relevant to the distribution of property, but the trial court must consider all the relevant factors and not assign disproportionate weight to any one circumstance. The trial court has broad discretion in fashioning its rulings, and there can be no strict mathematical formulations. While the division need not be equal, it must be equitable. Likewise, the factors to be considered will not always be equal, but where any are relevant to the value of the property or to the needs of the parties, specific findings of fact regarding those factors must be made. Factors to be considered are: the duration of the marriage, the contributions of the parties to the marital estate, their age, health, life status, necessities, circumstances, earning abilities, and past relations and conduct, general principles of equity, and any other factor relevant to the particular case, including consideration of the interruption of the personal career or education of either party.

4. In this case, the trial court did not consider all the relevant factors, but fashioned the remedy solely on the basis of the plaintiff's perceived fault and erred in assigning disproportionate weight to this factor. Although there was evidence on the record, the trial court made no findings with regard to the age, health, life status, necessities, circumstances, and the earning ability of the parties, or any other general principles of equity. The findings related only to the duration of the marriage, the employment history of both parties, the acquisition of assets, and the infidelity of the plaintiff during the marriage. Thus, remand is required for further proceedings before a different judge because the trial court failed to make findings of fact essential to a proper resolution, because the resulting property division was inequitable, and because the appearance of justice will be better served if another judge presides.

Reversed and remanded.

Justice Boyle, concurring in part and dissenting in part, stated that on remand the case need not be assigned to a

different judge. Rather, it should be remanded for application of the appropriate factor analysis and for findings of fact without prejudice to the plaintiff's right to present her request for disqualification.

Justice LEVIN, dissenting, stated that the divorce laws were amended to provide for the substitution of one no-fault ground for divorce for the existing fault-based grounds. Validating the introduction of evidence concerning marital fault for determining the division of property reintroduces the evil sought to be remedied by the Legislature and is opposed by the overwhelming weight of authority.

Fault as an issue in a divorce action caused delay in the courts and impeded the working out of suitable arrangements for custody of the children, visitation rights, alimony, child support, and property settlement and often pressured participants to make unfair and unreasonable concessions. It makes little difference whether it is under one section of the divorce laws or another that a participant, by introduction of fault as an issue, is delayed in obtaining a divorce, is impeded in working out suitable arrangements for property settlement, or is pressured to make unfair or unreasonable concessions concerning property division. The legislative purpose—eliminating litigation concerning fault as a cause of delay, as an impediment to working out suitable arrangements, and as a cause of pressure to make unfair and unreasonable concessions concerning property division—is defeated by the majority's decision allowing fault to be considered as a factor in determining property division.

In barring a plaintiff from alleging any ground for divorce other than the statutory no-fault ground, the Legislature evidenced its intent to bar fault as an issue, including in determinations of property division. Under the majority's analysis, any grievance would be relevant, permitting a divorce proceeding, again, to become a forum for finger-pointing and ventilating grievances.

DIVORCE — DIVISION OF PROPERTY — MARITAL MISCONDUCT.

In an action for divorce, marital misconduct is only one factor to consider in establishing the division of marital property; the trial court must consider other circumstances to reach an equitable division, including: the duration of the marriage, the contributions of the parties to the marital estate, their age, health, life status, necessities, circumstances, earning abilities, and past relations and conduct, general principles of equity, and any other factor relevant to the particular case.

*Reider & Brown, P.C.* (by *Richard K. Reider*), for the plaintiff.

*Potuznik, Carrozza, Wilson, Hermanson & Wistrom, P.C.* (by *Denis V. Potuznik* and *Kevin T. Wistrom*), for the defendant.

Amicus Curiae:

*Katherine L. Barnhart, P.C.* (by *Katherine L. Barnhart*), and *Williams, Schaefer, Ruby & Williams, P.C.* (by *James P. Cunningham*), for State Bar of Michigan, Family Law Section.

CAVANAGH, C.J. In this divorce case we are asked to consider the element of fault as it relates to the division of marital assets. While marital misconduct remains one of the considerations for establishing the division of property, it is only one of several relevant factors that the trial court must consider to reach an equitable division. In this case we are left with the firm conviction that the award was inequitable because disproportionate weight was ascribed to fault, and therefore we remand for a new hearing before a different judge.

I

The parties had been married for twenty-six years when the complaint for divorce was filed on May 11, 1987. At the time of trial, the plaintiff-wife was forty-two years old and the defendant-husband was forty-five years old. There is one adult child of the marriage. Throughout the marriage both parties were regularly employed, but at the time of trial the plaintiff was unemployed. Her sole income at that time consisted of temporary alimony ordered by the court while the divorce proceedings were pending. The defendant, on the

other hand, was employed at the time of trial, earning an annual salary of approximately $41,000. The defendant earned his college degree during the marriage while the plaintiff ceased her education at age sixteen when she married the defendant.

The trial court's findings of fact included a finding that the plaintiff's sexual infidelity, and her desire to get out of the marriage, caused the breakdown of the marriage. The trial judge then awarded no alimony, attorney fees of $500 to the plaintiff,[1] and a property division of twenty-five percent to the plaintiff and seventy-five percent to the defendant. The Court of Appeals reversed the trial court on the issue of alimony and remanded for an evidentiary hearing. Furthermore, in a divided opinion, the Court affirmed the trial court's division of assets stating,

> Although the division of assets in the instant case may appear unduly harsh, we are not convinced we would have reached a different result had we been in the trial judge's position. . . . [A]lthough perhaps not the division we would have chosen, given that fault or misconduct of one of the parties is a proper consideration when fashioning an equitable property settlement, . . . we find no abuse of discretion . . . .[2]

This Court granted leave to appeal. 437 Mich 1036 (1991).

II

As a threshold issue, we need to clarify the

[1] The award of attorney fees was later reduced to $250 when the plaintiff's attorney moved to withdraw before the divorce judgment was prepared.

[2] Unpublished opinion per curiam of the Court of Appeals, decided August 8, 1990 (Docket No. 110535).

appellate standard of review that applies to matters such as alimony and property distribution. The decision in this case was released on August 8, 1990, just one month before this Court decided *Beason v Beason,* 435 Mich 791; 460 NW2d 207 (1990). In *Beason,* we declared that the clearly erroneous standard of appellate review applies to findings of fact in a divorce case. In preserving the distinction between the fact-finding function and dispositional rulings such as the awarding of alimony and the division of property, we said, in passing, that "the court must exercise its discretion in fashioning a disposition." *Id.* at 798.[3]

After *Beason* was released various panels of the Court of Appeals interpreted differently its effect on the standard of review in divorce cases. See, e.g., *Reigle v Reigle,* 189 Mich App 386; 474 NW2d 297 (1991) (when a decision lies in the discretion of the trial court it should be reviewed for an abuse of that discretion); *Bowers v Bowers,* 190 Mich App 51; 475 NW2d 394 (1991) (all orders and judgments in a divorce case should be affirmed unless the trial court's factual findings are clearly erroneous); *Schubring v Schubring,* 190 Mich App 468; 476 NW2d 434 (1991) (review de novo of dispositional rulings remains the appropriate standard after *Beason*); *Thames v Thames,* 191 Mich App 299, 309; 477 NW2d 496 (1991) ("We will not disturb a property division unless we are convinced that we would have reached a different result").

A long line of cases before *Beason* had established that equity decisions were reviewed de novo but were not reversed unless the reviewing court was convinced that it would have reached a different result:

---

[3] See Powell & McAlpine, *Standards of review in Michigan,* 70 Mich B J 28, 30 (1991) ("The fact that a decision is discretionary—that is, not governed by a strict legal rule—does not inevitably mean that the standard of review must be 'abuse of discretion' ").

We hear and consider chancery cases de novo on the record on appeal. . . . This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. We do not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge. [*Christine Bldg Co v City of Troy,* 367 Mich 508, 517-518; 116 NW2d 816 (1962).]

This same standard was said to apply both to findings of fact and dispositional rulings. But, as recognized in *Beason,* although the standard of review in divorce cases was labeled de novo, the findings of fact were not truly considered de novo. Rather, the factual findings of the trial court were accorded substantial deference and not lightly reversed on the ground that the trial court was in a better position to evaluate the witnesses. Recognition of the superior position of the trial court in evaluating credibility was one rationale employed in *Beason:*

[W]e do see one clear and consistent historical theme: appellate courts have recognized the superior position of the trial court in evaluating the evidence and have hesitated to interfere with factual findings. [435 Mich 799.]

This rationale loses pertinence when the appellate court is reviewing a dispositional ruling because that task is not solely grounded in evaluating credibility. *Beason* recognized and preserved the distinction between findings of fact and disposi-

tional rulings. While *Beason* recognized that the scope of appellate review of findings of fact had never been truly de novo and that the findings had, in fact, been accorded substantial deference, the broad power to exercise discretion in dispositional rulings had not been so circumscribed. The judge's exercise of discretion in fashioning a property division is not entirely based on the demeanor of witnesses or issues of credibility; accordingly, the reasons for great appellate deference are simply inapplicable.[4] The trial court is not in a position superior to the appellate court in this area of applying conscience and reason, and it is the duty of the appellate court to reach an independent conclusion. *Charlton v Charlton,* 397 Mich 84, 95; 243 NW2d 261 (1976) ("The appellate court may review the trial court record, come to a different conclusion and state the reasons").

*Beason* also relied on the rule that requires appellate courts to accept findings of fact unless they are clearly erroneous.[5] In contrast, the stat-

---

[4] In fact, appellate courts are relatively more competent at reducing the risks of error and arbitrary judgment. As one commentator has noted,

> [T]he appellate court may be superior to the trial court in researching, interpreting and applying the law, due to its specialization in deciding law questions, its customarily greater library and law clerk resources, and its habit of collegial decision-making. Along with the need for uniformity, these considerations justify appellate substitution of judgment for conclusions of law and, arguably, of mixed law and fact. [Shreve & Raven-Hansen, Understanding Civil Procedure, § 102, p 402.]

Considerations of consistency, along with the tempering effect of collegial decision making, justify broader appellate review of the exercise of discretion in divorce cases.

[5] MCR 2.613(C) states:

> Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it.

utes dealing with the disposition of property upon divorce do not require any deference to the lower court. Indeed, the statutes each include an indication that general principles of equity must be considered.[6] Because the Legislature has granted broad powers to the court to exercise discretion in fashioning equitable decrees, and because equity cases involve issues that are not governed by a clear legal standard,[7] it is inappropriate to apply the formulation of clear legal error to the dispositional ruling. In *Beason* we did not eliminate de novo review altogether, rather we distinguished factual findings from dispositional rulings and held that "the factual findings of a trial court in a

---

[6] MCL 552.23(1); MSA 25.103(1) provides in pertinent part:

Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage as are committed to the care and custody of either party, the court may further award to either party the part of the real and personal estate of either party and alimony out of the estate real and personal, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case.

[7] The United States Supreme Court has defined discretion as follows:

The term "discretion" denotes the absence of a hard and fast rule. . . . When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result. [*Langnes v Green,* 282 US 531, 541; 51 S Ct 243; 75 L Ed 520 (1931).]

There is no basis for believing that the reason and conscience of the trial judge is in any way superior to the reason and conscience of the appellate court. Allowing the appellate court to reverse a dispositional ruling that is inequitable is necessary to preserve consistency in the application of the law in areas where there is no "hard and fast rule."

divorce case are to be reviewed for clear error." 435 Mich 805. The clear error test has always been part of the proper application of the de novo review standard, but its application is confined to the review of factual issues.[8]

Similarly, while a ruling that is an abuse of discretion certainly should be overturned,[9] the review of dispositional rulings is not limited to a review for an abuse of discretion. Divorce actions in Michigan are still considered a type of equity suit even though Michigan no longer has separate equity courts.[10] In equity cases it is not enough for the trial court to have acted in a nonarbitrary manner; it must also reach a disposition that is fair and just. As stated in *Bradley Grinding Machine Corp v Bradley*, 316 Mich 396, 399; 25 NW2d 520 (1947):

> The decree should not be reversed or altered unless it appears that it is not in accordance with the rights of the parties.

The test for an abuse of discretion is very strict,[11]

---

[8] Even in the area of fact finding, *Beason* recognized that appellate review is not limited to clear error in every circumstance. The Court said that "[w]here a finding is derived from an erroneous application of law to facts," or "where the trial judge's factual findings may have been influenced by an incorrect view of the law," the appellate court is not limited to review for clear error. 435 Mich 804-805.

[9] See *Spalding v Spalding*, 355 Mich 382; 94 NW2d 810 (1959) (the issue did not involve the appropriate standard of review; rather, the appellant argued that the chancellor had abused his discretion in failing to increase child support and this Court then defined "abuse of discretion").

[10] MCL 552.12; MSA 25.92 provides:

> Suits to annul or affirm a marriage, or for a divorce, shall be conducted in the same manner as other suits in courts of equity; and the court shall have the power to award issues, to decree costs, and to enforce its decrees, as in other cases.

[11] The standard has been defined as follows:

and ofttimes elevates the standard of review to an "apparently insurmountable height." *People v Talley,* 410 Mich 378, 398; 310 NW2d 809 (1981) (LEVIN, J., concurring). But a disposition ruling may be against the just rights of the parties without being a "perversity of will."[12] Limiting review to an abuse of discretion would have the effect of rendering the discretion virtually immune to appellate review where there is any evidence to support the ruling. This has not been the law in Michigan.[13] For example, in *Paul v Paul,* 362 Mich 43; 106 NW2d 384 (1960), this Court modified a property division even though there was evidence to support the decision. The Court said, "[W]e have no doubt that there is evidence of 'improvements' contributed by the husband to justify the lien awarded him by the circuit judge, provided such an award is 'equitable under all the circumstances of the case.' " *Id.* at 46. The Court then modified the award declaring that an equal division would "produce a fairer result." *Id.* at 47.

To alleviate any possible confusion stemming from our prior cases, we hold here that the appellate standard of review of dispositional rulings is not limited to clear error or to abuse of discretion. The appellate court must first review the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, the

> [T]o have an "abuse" . . . , the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. [*Spalding, supra* at 384-385.]

[12] *Spalding, supra* at 385.

[13] 7A Callaghan's Michigan Pleading & Practice (2d ed), § 57.96, p 401 ("[Michigan's court] rules are not regarded as being in conflict with or as having altered an appellate court's de novo power in a chancery case"). See *Edgar v Edgar,* 323 Mich 351, 362-363; 35 NW2d 181 (1948) ("We hear chancery cases *de novo* and are not bound by the conclusions reached by the trial court").

appellate court must decide whether the disposi-
tive ruling was fair and equitable in light of those
facts. But because we recognize that the disposi-
tional ruling is an exercise of discretion and that
appellate courts are often reluctant to reverse
such rulings,[14] we hold that the ruling should be
affirmed unless the appellate court is left with the
firm conviction that the division was inequitable.
*Kuntze v Kuntze,* 351 Mich 144; 88 NW2d 608
(1958); *Whittaker v Whittaker,* 343 Mich 267; 72
NW2d 207 (1955).[15]

III

Having clarified the standard of review, we must
apply that standard to this case. After the Legisla-
ture amended the divorce act[16] to provide for non-
fault-based grounds, some parties raised the issue

---

[14] See *Cooley v Cooley,* 320 Mich 209, 213; 30 NW2d 840 (1948),
where the Court said,

> The division of property in a suit for divorce is not governed
> by rigid rules. The Supreme Court does not substitute its
> judgment as to division of property for that of the trial judge in
> a suit for divorce in the absence of a clear showing of abuse of
> discretion.

See also *Wells v Wells,* 330 Mich 448; 47 NW2d 687 (1951); *DeMay
v DeMay,* 326 Mich 72; 39 NW2d 248 (1949); *Stalker v Stalker,* 313
Mich 209; 20 NW2d 867 (1945).

Although these cases all refer to a showing of abuse of discretion,
before affirming the award, the Court in each instance also expressly
determined that the decree was equitable.

[15] Other jurisdictions have acted in similar fashion. See, e.g., *Wan-
berg v Wanberg,* 664 P2d 568 (Alas, 1983) (distribution will not be
disturbed unless it is clearly unjust); *In re Marriage of Sinn,* 696 P2d
333 (Colo, 1985) (although the discretion is broad, it is not upheld if it
produces unfair or inequitable results); *In re Marriage of Loegering,*
212 Mont 499; 689 P2d 260 (1984) (will not intervene unless there has
been substantial injustice). See also James & Hazard, Civil Procedure
(3d ed), § 12.8, p 666 ("With respect to such discretionary decisions,
the appellate court will supersede only when it is satisfied that the
trial judge was clearly wrong").

[16] 1971 PA 75, MCL 552.6; MSA 25.86.

of considering "fault," whether in the form of domestic violence, sexual infidelity, or other misconduct, in the distribution of property upon divorce.[17]

This Court has not yet addressed the issue and, although other jurisdictions have resolved the question, the decisions from our sister states are of limited assistance because of differences in the statutory language. Some states, unlike Michigan, merely added nonfault grounds to the traditional fault grounds such as adultery and desertion.[18] Not surprisingly, the concept of fault remains a part of the jurisprudence in some of those states.[19] In contrast, the Michigan Legislature did not merely add to the existing fault grounds; therefore, it may have intended to remove the concept of fault altogether.[20] The remaining provisions of the 1971

[17] See *Papatriantafyllou v Papatriantafyllou,* 432 Mich 921; 442 NW2d 139 (1989) (LEVIN, J., dissenting from denial of leave); *Burkey v Burkey (On Rehearing),* 189 Mich App 72, 82, n 1; 471 NW2d 631 (1991) (SAWYER, J., concurring in part and dissenting in part) ("Plaintiff raises a number of interesting points addressing the issue whether fault should be considered. I am not, however, prepared to disagree with the large body of case law which approves of considering fault in determining an appropriate property division.").

[18] See, e.g., Idaho Code 32-616; Me Rev Stat Ann, tit 19 § 691; NJ Stat Ann 2A:34-23; 23 Pa Stat Ann 3301; RI Gen Laws 15-5-3.1; Va Code 20-91, subsection 9.

[19] In Rhode Island the property division statute requires the court to consider the conduct of the parties during the marriage. RI Gen Laws 15-5-16.1. In Idaho, the statute declares that, absent compelling reasons, there should be a substantially equal division. In Virginia, the use of fault is sanctioned where its effect has an economic effect upon the marital property or its value. *Marion v Marion,* 11 Va App 659; 401 SE2d 432 (1991). But in Maine, marital fault, at least insofar as it relates to noneconomic issues, is an inappropriate consideration in property distribution. *Eaton v Eaton,* 447 A2d 829 (Me, 1982). And in Pennsylvania, the statute expressly declares that property rights will be determined "without regard to marital misconduct." 23 Pa Stat Ann 3502.

[20] Before 1971 PA 75 the statute read as follows:

"A divorce from the bonds of matrimony may be decreed by the circuit court of the county where the parties, or one of

act, however, demonstrate that such an intent was limited. In fact, the express words of the section relating to the grounds for divorce imply that conduct, such as the marital infidelity that occurred in this case, may indeed be relevant to the granting of the divorce because there must be "evidence . . . presented in open court that there has been a breakdown in the marriage relation-

them, reside, or by the court of chancery, on the application by petition or bill of the aggrieved party, in either of the following cases:

"1. Whenever [adultery] has been committed by any husband or wife;

"2. When one of the parties was physically incompetent at the time of the marriage;

"3. When one of the parties has been sentenced to imprisonment in any prison, jail or house of correction, for three years or more; and no pardon granted to the party so sentenced, after a divorce for that cause, shall restore such party to his or her conjugal rights;

"4. When either party shall desert the other for the term of two years;

"5. When the husband or wife shall have become an habitual drunkard;

"6. And the circuit courts may, in their discretion, upon application as in other cases, divorce from the bonds of matrimony, any party who is a resident of this State, and whose husband or wife shall have obtained a divorce in any other State." [1851 PA 64, § 6.]

The statute, as amended, reads in part:

(1) A complaint for divorce may be filed in the circuit court upon the allegation that there has been a breakdown of the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved. In the complaint the plaintiff shall make no other explanation of the grounds for divorce than by the use of the statutory language.

\* \* \*

(3) The court shall enter a judgment dissolving the bonds of matrimony if evidence is presented in open court that there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved. [MCL 552.6; MSA 25.86.]

ship." Logically, evidence of infidelity or domestic violence may be related to the breakdown of a marriage relationship; this language does not demonstrate any legislative intent to totally remove the consideration of the parties' conduct during the marriage.

Even more significantly, the 1971 act did not amend the section pertaining to the division of property and alimony. Other states, when providing for nonfault divorce grounds, have often included amendments of the sections relating to property divisions as well. Some states amend the property division sections to expressly delineate the factors to be considered when distributing property.[21] Some states, following the Uniform Marriage and Divorce Act, 9A ULA 157, adopt an equitable distribution statute and expressly exclude the consideration of marital misconduct.[22] One state has an equitable distribution statute excluding the consideration of fault or marital misconduct "except for a consideration of the economic consequences of conduct."[23] Presumedly, fault is one factor in determining the division when the conduct at issue dissipates the value of the marital property.

Unfortunately, the Legislature in Michigan did not amend the property division section along any of these lines; in fact, the 1971 act did not amend

---

[21] See, e.g., Idaho Code 32-616; Iowa Code Ann 598.21; Me Rev Stat Ann, tit 19, § 691.

[22] The typical property division statute in these states provides as follows:

> [T]he court shall make a just and equitable division of the marital property of the parties without regard to marital misconduct, after making findings regarding the division of the property. [Minn Stat Ann 518.58.]

See also Ky Rev Stat 403.190 and 23 Pa Stat Ann 3301.

[23] See 14 W Va Code 48-2-32.

the alimony, support, and property division section at all.[24]

The legislative intent behind the 1971 act was examined in a Court of Appeals decision which dealt with this issue soon after the no-fault divorce act was enacted in 1971. In *Kretzschmar v Kretzschmar*, 48 Mich App 279; 210 NW2d 352 (1973), the plaintiff in a divorce action appealed from the dismissal of his complaint. The Court's holding concerned the plaintiff's entitlement to a judgment of divorce. The lower court dismissed the complaint even though both parties conceded that there had been a breakdown in the marital relationship and the record demonstrated a lack of reasonable likelihood of preserving the marriage.[25] The Court of Appeals reversed the lower court and went on, in extensive obiter dicta, to consider whether the conduct of the parties remained a

[24] As discussed in *Kretzschmar v Kretzschmar*, 48 Mich App 279, 288, n 6; 210 NW2d 352 (1973), the Senate did propose the following amendment of the House Bill:

> "In an action for the annulment of a marriage, divorce or separate maintenance, the court may award support payments for minor children or division of the real and personal assets of either spouse that is fair and equitable under the circumstances, and alimony on finding of necessity. The court may hear testimony as is necessary in making these awards or in deciding matters of custody."

Notably, however, even this proposed (and rejected) amendment was still couched in equity terms, and did not disallow the consideration of the parties' conduct during the marriage. In fact, the trial court would have been expressly allowed to "hear testimony as is necessary," and no limitation on this testimony was stated.

[25] These two factors mandated a judgment of divorce:

> The court shall enter a judgment dissolving the bonds of matrimony if evidence is presented in open court that there has been a breakdown in the marriage relationship to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved. [MCL 552.6(3); MSA 25.86(3).]

relevant factor for the determination of alimony and property settlement. To reach its ultimate conclusion in this regard, the Court in *Kretzschmar, supra* at 288, examined the legislative history of the no-fault divorce act. The Court said that "although the Michigan Legislature revised the conceptual basis for granting divorce it did *not* intend to modify the traditional grounds for determining custody, support, alimony, and property division." We agree that there is no indication that the legislative purpose in providing no-fault grounds was to affect the factors relevant in awarding property divisions. See *Mitchell v Mitchell,* 333 Mich 441, 444; 53 NW2d 325 (1952) ("The matter of grounds for divorce is entirely distinct and separable from the question of property settlement . . ."). The Legislature's failure to amend the property division section weighs against deducing such a legislative intent. Rather, by failing to alter the statutory provision regarding property division, the Legislature evidenced an intent to retain the traditional factors when fashioning a property settlement.

We conclude, therefore, that the trial judge must fashion the division of property under the statutory scheme and the relevant case law as they existed before the 1971 amendment of the divorce act. The Legislature is presumed to know of existing interpretations of legislation. *Longstreth v Gensel,* 423 Mich 675, 691; 377 NW2d 804 (1985); *Smith v Detroit,* 388 Mich 637, 650; 202 NW2d 300 (1972). We must presume that the Legislature knew that, in fashioning property settlements, the courts had delineated several factors to be considered, including the conduct of the parties during the marriage. Because the Legislature made the choice not to amend this provision, we must conclude that it was acquiescing in the judicial con-

struction. As further support for our deduction of legislative intent, we note that the property division section was further amended in 1983, but the Legislature did not alter the basic substance.[26] It is not a proper role for this Court to determine whether it may have been preferable to eliminate the concept of fault from the equation; rather, our job is to determine whether the Legislature has, in fact, eliminated it. We conclude that it has not.

IV

Determining that fault remains one of the relevant factors in a property settlement does not fully resolve this case. One additional task is to determine the manner in which the factor should be weighed and considered.

While the Court of Appeals has invariably held that fault remains *a* factor, none of the cases has held that it is the *only* factor.[27] We recognize that the conduct of the parties during the marriage may be relevant to the distribution of property, but the trial court must consider all the relevant factors and not assign disproportionate weight to any one circumstance.

It is not desirable, or feasible, for us to establish a rigid framework for applying the relevant factors. The trial court is given broad discretion in

[26] 1983 PA 193 substituted "entry of a judgment of divorce or separate maintenance," for "every divorce from the bond of matrimony and also upon every divorce from bed and board." The amendment also made some grammatical changes and rewrote subsection 3 which relates to county costs of handling alimony and support money payments. The Legislature, if unhappy with the Court's interpretations, which continued to consider fault in property divisions, could have corrected the statute at this time. It chose not to do so.

[27] *Vance v Vance,* 159 Mich App 381, 386; 406 NW2d 497 (1987) ("fault is not the sole factor to be considered"); *Davey v Davey,* 106 Mich App 579, 581; 308 NW2d 468 (1981) (fault is still one of many valid considerations); *Chisnell v Chisnell,* 82 Mich App 699, 707; 267 NW2d 155 (1978) (fault is still a consideration).

fashioning its rulings and there can be no strict mathematical formulations. See *Hallett v Hallett,* 279 Mich 246; 271 NW 748 (1937); *Cartwright v Cartwright,* 341 Mich 68; 67 NW2d 183 (1954). But, as we have recognized before, while the division need not be equal, it must be equitable. *Christofferson v Christofferson,* 363 Mich 421; 109 NW2d 848 (1961). Just as the final division may not be equal, the factors to be considered will not always be equal. Indeed, there will be many cases where some, or even most, of the factors will be irrelevant. But where any of the factors delineated in this opinion are relevant to the value of the property or to the needs of the parties, the trial court shall make specific findings of fact regarding those factors. It is hoped that this requirement will result in greater consistency and provide for more effective and meaningful appellate review.

As acknowledged above, the division of property is not governed by any set rules. Nevertheless, this Court has established certain principles of general application. In *Johnson v Johnson,* 346 Mich 418, 431; 78 NW2d 216 (1956), we said:

> The portion of property awarded to each party depends upon all the equitable factors involved, including the following: source of property, contribution towards its acquisition, the years of married life, the needs of the parties, their earning ability and also the cause for divorce.

These general standards have been refined and expanded upon by the Court of Appeals, and we readily acknowledge that additional factors, beyond those listed in *Johnson,* may be relevant to the disposition of assets. We hold that the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions

of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. *Perrin v Perrin,* 169 Mich App 18, 22; 425 NW2d 494 (1988). There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case.

In the case at bar, a review of the record persuades us that the trial court was not considering all the relevant factors, but was fashioning the remedy solely on the basis of the plaintiff's perceived "fault":

> In this case, the Court is going to divide the assets 75 percent to Mr. Sparks and 25 percent to Mrs. Sparks *as a result of her fault causing this divorce.*[28]

The trial court erred in assigning disproportionate weight to this one factor.

The court's findings of fact were relatively truncated. We set them forth in their entirety:

> The Court finds the following facts: First of all, based on the Court's comments thus far, that the

---

[28] The judge also acknowledged that his practice is to divide assets evenly unless the parties have unequal abilities or unless there is a finding of "fault":

> To me, it doesn't matter what numbers are. People share 50-50 in the disposition of assets *when there is no fault* and when the parties have some kind of equal abilities after a divorce. [Emphasis added.]

plaintiff has failed to prove by a preponderance of
the evidence her contentions that the fault re-
mains with the defendant. *The Court is satisfied
that the reason for this divorce is Mrs. Sparks'
conduct with a third person, resulting in the fail-
ing of this marriage.*

The Court finds that this is a marriage of ap-
proximately 26 years. Both the plaintiff and defen-
dant worked in the course of the marriage. Nu-
merous assets were accumulated during the course
of the marriage—an inheritance of approximately
20 to 45 thousand dollars from the death of Mrs.
Sparks' father; a house, with a net value of $20,000.
There is no other credible evidence of anything
more than a $64,000 fair-market value, and I as-
sume there must be a mortgage of $44,000. The
Court adopts the net value in the trial brief of the
defendant.

There is also a house with a life estate to Mr.
Sparks' mother in Troy, Michigan, which this
Court considers an asset of the marriage, since it's
titled in Mr. and Mrs. Sparks' names.

Further, there is a boat, an '82 Pontiac, respec-
tive individuals' IRAs, a 401-K, profit-sharing plan
and other assets, which values are not in dispute.

It's clear from the testimony that the inheri-
tance in whatever specific amount that was re-
ceived was invested, cashed in, spent, and re-
invested to a degree that the Court cannot specifi-
cally make an exact factual determination on
what value is left, so the Court is going to have to
arbitrarily pick a number.

*The Court is satisfied that the defense has
proven by a preponderance of the evidence a sex-
ual relationship with a third party, which has
resulted, basically, in this marriage failing.*[29] *The
Court therefore will allow fault to enter into the
division of the property.*

There is no question, at least in the Court's
mind, of a temporary psychological difficulty on

[29] The plaintiff concedes that this finding of sexual infidelity is not
clearly erroneous and that, under *Beason,* it cannot be reversed.

the part of Mrs. Sparks, but oftentimes in these cases, once the divorce is over with, people magically get well and go about their lives.

*I have done some research; and as much as I want to punish some people in a divorce, I find out that these appellate judges, who don't try divorce cases, say that it's just unfair.*

The Court can't overlook the fact that we are dealing with assets which have been accumulated during 26 years of marriage, and I really don't care how much a man is working if the woman is working and raising kids, or taking care of a house, et cetera. To me, it doesn't matter what numbers are. People share 50-50 in the disposition of assets when there is no fault and when the parties have some kind of equal abilities after a divorce. [Emphasis added.]

The trial court, although there was evidence on the record, made no finding regarding the age of the parties, the health of the parties,[30] status in life, necessities and circumstances of the parties, the earning abilities of the parties, or other general principles of equity. The sum total of the findings of fact related to only four factors: (1) A twenty-six year marriage, (2) a history of employment for both parties, (3) the acquisition of numerous assets during the marriage, and (4) the sexual infidelity of the plaintiff during the marriage.

The most effective appellate review obviously would result from more thorough fact finding,[31] but even from these four factors, it is apparent that the trial court erred. A woman who was an effective partner through a quarter of a century, assisting in the acquisition of assets, and employed

[30] The court did acknowledge a "psychological difficulty" on Mrs. Sparks' part, but concluded that she may "magically get well." We fail to find record support for this position.

[31] As recognized in *Beason, supra* at 798 ("The trial court's disposition is of course intimately related to its findings of fact . . .").

throughout, is entitled to a more equal disposition. The concept of fault cannot be given such a disproportionate weight. Marital misconduct is only one factor among many and should not be dispositive.

We conclude that remand is warranted under MCR 2.517 because the trial court has failed to make findings of fact essential to a proper resolution of the legal question and because the resulting property division was inequitable.

Upon remand the court shall make additional findings of fact and weigh any finding of fault in conjunction with all the other relevant factors.

V

The plaintiff also contends that on remand the case should be assigned to a different judge. We agree. We are sensitive to the appearance of impropriety resulting from the judge's assignment both to this case and to the divorce proceedings of the plaintiff's reputed lover. That matter was before the same judge just one day before the *Sparks* case, and the defendant's attorney referred to the testimony from the other proceedings several times. Because the judge may have been influenced by matters discussed in the previous day's proceedings, we conclude that "the appearance of justice will be better served if another judge . . . presides . . . ." *People v Jackson,* 391 Mich 323, 341; 217 NW2d 22 (1974).

VI

We reverse the judgments of the courts below and remand for assignment to a different judge and for further proceedings consistent with this opinion.

Brickley, Boyle, Riley, Griffin, and Mallett,
JJ., concurred with Cavanagh, C.J.

Boyle, J. (*concurring in part and dissenting in
part*). While I agree with the result and reasoning
in §§ i through iv of the majority opinion, I do not
agree that, on remand, this case must be assigned
to a different judge.

I would remand for application of the appropri-
ate factor analysis and for findings of fact without
prejudice to the plaintiff's right to present her
request for disqualification. Although I recognize
that the appearance of prejudice may arise from
the fortuity of the original assignment of the two
cases to the trial judge, and it may be appropriate
for the trial judge to recuse himself, I cannot join
the order directing recusal.

Levin, J. (*dissenting*). In 1971, on the recommen-
dation of the Law Revision Commission,[1] the di-
vorce laws were amended to provide for the "sub-
stitution of one non-fault ground for divorce for
the existing fault grounds."[2]

The majority turns the clock back over twenty
years in holding that fault remains "one of the
relevant factors"[3] for determining the division of
property. Validating the introduction of evidence
concerning marital fault reintroduces the evil
sought to be remedied by the enactment of no-
fault divorce. The construction placed by the ma-
jority on the 1971 statute[4] is opposed by the over-
whelming weight of authority.[5]

[1] Michigan Law Revision Commission, 5th Annual Report, p 7.

[2] *Id.,* p 8.

[3] *Ante,* p 158.

[4] 1971 PA 75, MCL 552.6; MSA 25.86.

[5] See part ii.

I

The Law Revision Commission said that the introduction of fault as an issue in an action for divorce was a cause of delay in the courts, and that the recital of misconduct in a complaint for divorce "impedes the working out of suitable arrangements for custody of the children, visitation rights, alimony, child support and *property settlement*,"[6] and that in a fault regime "participants often are pressured to make unfair and unreasonable concessions as to child custody, alimony, child support or *property division*."[7]

A

The goal of the Law Review Commission, eliminating fault as an issue, is expressed in the language recommended to and adopted by the Legislature: "In the complaint the plaintiff shall make no other explanation of the grounds for divorce than by the use of the statutory language."[8]

The "statutory language" provides that a divorce shall be granted where "there has been a breakdown in the marriage relationship to the extent that the objects of matrimony[9] have been destroyed and there remains no reasonable likelihood that the marriage can be preserved."[10]

The complaint frames the issues to be tried in a lawsuit. In barring the plaintiff from alleging any ground for divorce other than the statutory no-fault ground, the Legislature evidenced its intent

---

[6] Commission Report, n 1 *supra*, p 8. (Emphasis added.)

[7] *Id.*, p 7. (Emphasis added.)

[8] MCL 552.6(1); MSA 25.86(1).

[9] The bill recommended by the commission spoke of the "*legitimate* objects of matrimony." Commission Report, n 1 *supra*, p 11.

[10] MCL 552.6; MSA 25.86.

to bar fault as an issue.[11] The majority holds incongruously that fault, no longer an issue, may be considered in the division of property.

The Wisconsin Supreme Court observed:

Establishing blame for the failure of a marriage was a primary function under the prior divorce law. It was also the primary basis for criticism of that law and led to its repeal. The proponents of no-fault divorce pointed out, and the legislature apparently agreed, that usually the conduct of both spouses contributes to the failure of a marriage, that establishing guilt and innocence is not really useful, and that the adversarial nature of fault-based divorce proceedings fosters bitterness and acrimony which are detrimental to both parties and any children involved.[12]

---

[11] The New Hampshire statute similarly provides:

A divorce from the bonds of matrimony shall be decreed, irrespective of the fault of either party, on the ground of irreconcilable differences which have caused the irremediable breakdown of the marriage. In any pleading or hearing of a libel for divorce under this section, *allegations or evidence of specific acts of misconduct shall be improper and inadmissible,* except where child custody is in issue . . . or . . . where it is determined by the court to be necessary to establish the existence of irreconcilable differences. [NH Rev Stat Ann 458:7-a. Emphasis added.]

The New Hampshire Supreme Court has ruled that while fault can statutorily be considered in some limited circumstances, these are extreme, and fault should not routinely be considered in asset distribution. *Murphy v Murphy,* 116 NH 672; 366 A2d 479 (1976). In a later case, the court ruled that if a divorce is granted on no-fault grounds, fault may not be considered on questions of property division or alimony. *Chabot v Chabot,* 126 NH 793; 497 A2d 851 (1985). Subsequently, the court further ruled that in a no-fault divorce, marital misconduct may not be considered in property division. *Boucher v Boucher,* 131 NH 377; 553 A2d 313 (1988).

[12] *Dixon v Dixon,* 107 Wis 2d 492, 502; 319 NW2d 846 (1982).

Homer H. Clark, Jr., in his treatise on domestic relations law, offered the following reasons for not considering fault in property distribution:

The arguments for this position are that divorces are now

B

It makes little difference whether it is under one section of the divorce laws or another that a participant is, by introduction of fault as an issue, delayed in obtaining a divorce, or is impeded in working out suitable arrangements for property settlement, or is pressured to make unfair or unreasonable concessions concerning property division.

The legislative purpose—eliminating litigation concerning fault as a cause of delay, as an impediment to working out suitable arrangements, and as a cause of pressure to make unfair and unreasonable concessions concerning property division— is defeated by today's decision allowing fault to be considered as a factor in determining property division.

C

If a trial judge must consider, in deciding property division, as a "factor," that one or both of the participants, in violation of the marital vow, did not "forsake all others," then, by the same rationale—now that fault is again a factor—the judge may also be called upon to consider, in dividing property, evidence that one party or both violated the promise to "live together in marriage," or the promise to "love and comfort," or the promises to

generally granted without regard to fault; that it is difficult to determine in most cases which spouse is at fault; that fault may merely be evidence of a marriage which is no longer viable; and that the whole concept of fault is one which is not relevant to the basis for the property division, i.e., that it recognizes the contribution which each spouse made to the marriage. [2 Clark, The Law of Domestic Relations in the United States (2d ed), § 16.3, p 195.]

"honor and keep" the other "for better or worse, for richer or poorer, in sickness and in health."

The majority argues that evidence of infidelity or domestic violence may be related to the statutory ground, "breakdown in the marriage relationship," and that the statutory language "does not demonstrate any legislative intent to totally remove the consideration of the parties' conduct during the marriage."[13] Any grievance tending to establish the statutory ground of "breakdown in the marriage relationship" would, again, under the majority's analysis, be relevant without regard to whether there is any issue of child custody or property division. The divorce proceeding can again become a forum for finger-pointing and ventilating grievances, and the law returns full circle to where it was immediately before the Legislature enacted the no-fault statute.

The majority's analysis makes even "cookie crumbs" relevant. Under the majority's construction of the 1971 no-fault statute, the judge might consider, might even be obliged to consider, in deciding the division of property—to be sure *only* as a "factor"—whether a party did indeed eat cookies in bed.

D

It is noteworthy that the Law Revision Commission stated that the statute it was recommending was based on the Iowa statute. The Iowa Supreme Court held that evidence of fault respecting the breakdown of a marriage is inadmissible on the issues of property settlement, alimony, or support under a statute providing for dissolution of mar-

---

[13] *Ante,* p 155.

riage upon a finding that the marriage is no longer viable.[14]

In another case, the court said that not only must the "guilty party" concept be eliminated as a factor, but evidence of the conduct of the parties insofar as it tends to place fault for the breakdown of the marriage on either spouse must also be rejected as a factor in awarding a property settlement or an allowance of alimony or support money.[15]

II

Forty-three states currently provide for no-fault divorce.[16] Of these, thirteen do not allow fault of any kind to be considered when dividing marital property where a no-fault divorce is entered.[17] Two states permit the consideration only of "egregious"

[14] *In re Marriage of Williams,* 199 NW2d 339 (Iowa, 1972).

[15] *In re Marriage of Tjaden,* 199 NW2d 475 (Iowa, 1972).

[16] Alabama, Alaska, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. See Am Jur 2d Desk Book, Item No. 121, p 384 (1979), and Walker, *Family law in the fifty states: An overview,* 25 Family L Q 417, 439-440 (1992). See also *ante,* p 153, ns 18 and 19, and p 155, n 21.

Arizona, California, Colorado, Hawaii, Indiana, Iowa, Kentucky, Michigan, Minnesota, Montana, Nebraska, Oregon, Washington, and Wisconsin replaced traditional fault-based grounds with no-fault as the sole ground for divorce. *Id.*

Alabama, Alaska, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Kansas, Maine, Massachusetts, Mississippi, Missouri, New Hampshire, New Jersey, North Dakota, Pennsylvania, Rhode Island, South Dakota, Tennessee, Texas, Utah, Virginia, West Virginia, and Wyoming added a no-fault ground to existing traditional fault-based grounds. *Id.*

[17] Alaska, California, Iowa, Kentucky, Maine, Montana, Nebraska, New Hampshire, New Jersey, Oregon, Pennsylvania, South Dakota, and Wisconsin.

Kentucky, Montana, New Hampshire, Oregon, and Pennsylvania *expressly* preclude courts from considering fault when distributing

marital property. See Ky Rev Stat 403.190; 86 ALR3d 1116, 1127, § 4 (Supp, August, 1991), pp 57-58; NH Rev Stat Ann 458:7-a; 24 Am Jur 2d, Divorce and Separation, § 928, p 916; 23 Pa Stat Ann 3502.

*Alaska:* See *Hartland v Hartland,* 777 P2d 636 (Alas, 1989) (marital misconduct does not justify granting unequal percentages of the marital estate).

*California:* See, e.g., *In re Marriage of Juick,* 21 Cal App 3d 421; 98 Cal Rptr 324 (1971); *In re Marriage of Silvers,* 23 Cal App 3d 910; 100 Cal Rptr 731 (1972); *In re Marriage of Rosan,* 24 Cal App 3d 885; 101 Cal Rptr 295 (1972); *In re Marriage of Cosgrove,* 27 Cal App 3d 424; 103 Cal Rptr 733 (1972); *In re Marriage of Boseman,* 31 Cal App 3d 372; 107 Cal Rptr 232 (1973).

*Iowa:* See part I(D).

*Kentucky:* See Ky Rev Stat 403.190, adopting the Uniform Marriage and Divorce Act language that expressly excludes the consideration of marital misconduct in property distribution. This statute overruled *Chapman v Chapman,* 498 SW2d 134 (Ky, 1973), which held that fault could be considered in the distribution of assets because the legislature had failed to change the property distribution statute, when it adopted no-fault divorce, to expressly preclude fault from consideration.

*Maine:* See *Boyd v Boyd,* 421 A2d 1356 (Me, 1980) (marital fault is not to be considered at all in arriving at a property division).

*Montana:* See *In re Marriage of Collett,* 190 Mont 500; 621 P2d 1093 (1981) (the court is precluded from considering marital misconduct in disposing of marital assets).

*Nebraska:* See *Campbell v Campbell,* 202 Neb 575; 276 NW2d 220 (1979) (whether the unilateral act of one party had been responsible for the irretrievable breakdown of a marriage was not a proper factor for consideration by the trial court in making a division of property).

*New Hampshire:* See n 11 *supra.*

*New Jersey:* See *Chalmers v Chalmers,* 65 NJ 186; 320 A2d 478 (1974) (marital fault is not to be considered at all in arriving at a property division).

*Oregon:* See *Minovsky v Minovsky,* 10 Or App 540; 500 P2d 1234 (1972) (fault cannot be considered in determining a property division); *In re Marriage of Koch,* 58 Or App 252; 648 P2d 406 (1982) (the institution of no-fault divorce did away with the previous practice of assigning fault and awarding property or support on the basis of fault).

*Pennsylvania:* See 23 Pa Stat Ann 3502, stating that property rights must be determined "without regard to marital misconduct."

*South Dakota:* See *Baltzer v Baltzer,* 422 NW2d 584, 587 (SD, 1988): "Factors to be considered in dividing marital property include: duration of the marriage; value of the property; ages of the parties; their health and competency to earn a living; the individual contributions of the parties to the accumulation of the property; and the income producing capacity of the parties' individual assets. . . . *Fault should not be considered.*" (Emphasis added.) But see SD Cod Laws 25-4-45.1, allowing fault to be considered with regard to the awarding of property if it is relevant to "the acquisition of property during the

fault—behavior that shocks the conscience or indicates a *blatant* disregard of the marital relationship, such as attempting to murder a spouse, but not sexual infidelity.[18] Ten states limit judicial consideration to "economic" fault—conduct, usually postseparation, that leads to depletion of marital financial resources.[19] And one state limits con-

---

marriage," and allowing fault to be considered with regard to the awarding of child custody if it is relevant to "the fitness of either parent."

*Wisconsin:* See *Dixon v Dixon,* n 12 *supra,* p 502 (marital misconduct should not be considered when deciding questions of property division and maintenance).

[18] Kansas and North Dakota. North Dakota also permits consideration of "economic waste by one spouse." *Martin v Martin,* 450 NW2d 768, 770 (ND, 1990).

New York, which is not a no-fault state, also allows "egregious fault" to be considered.

*Kansas:* See *In re Marriage of Sommers,* 246 Kan 652; 792 P2d 1005 (1990) (fault may not be considered in a property division *except in extreme situations,* and a financial penalty may not be assessed because the legislature intended consideration of fault regarding grounds of dissolution only).

*New York:* See *O'Brien v O'Brien,* 66 NY2d 576, 589; 489 NE2d 712 (1985) (the statute authorizes courts to consider " 'any other factor which the court shall expressly find to be just and proper,' " *but this may only be done in egregious cases* that shock the conscience of the court, because only then would it be just and proper to take fault into account); *Rosenberg v Rosenberg,* 126 AD2d 537, 539; 510 NYS2d 659 (1987): "[g]enerally, 'the marital fault of a party is not a relevant consideration . . . in distributing marital property . . . [*unless the*] *marital misconduct is so egregious or uncivilized as to bespeak of a blatant disregard of the marital relationship [that is] misconduct that "shocks the conscience" of the court' "—"defendant's adulterous relationship, . . . does not, without more,"* constitute such egregious conduct.

*North Dakota:* See *Martin v Martin, supra,* p 770: "Without a determination of *serious marital misconduct* or economic waste by one spouse, we cannot direct substitution of an unbalanced division to the other spouse of property acquired during a long-term marriage." (Emphasis added.)

[19] Arizona, Florida, Illinois, Indiana, Maine, Minnesota, North Dakota, South Dakota, Virginia, and West Virginia.

Arizona and Minnesota statutes *expressly* preclude courts from considering marital misconduct except for economic fault when distributing property. See Ariz Rev Stat 25-319; Minn Stat Ann 518.58(1).

South Dakota permits fault of any kind to be considered when

determining child custody. North Dakota allows consideration of "serious marital misconduct" when dividing property. *Martin v Martin, supra,* p 770.

*Arizona:* See *Oppenheimer v Oppenheimer,* 22 Ariz App 238, 244; 526 P2d 762 (1974) (the statutory scheme expressly precludes a court from considering marital misconduct when distributing property unless such conduct leads to " '[e]xcessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common' "). Ariz Rev Stat 25-319.

*Florida:* See *Noah v Noah,* 491 So 2d 1124 (Fla, 1986) (with respect to an alimony award, adultery is only relevant as it relates to *depletion of financial resources*); *Mosbarger v Mosbarger,* 547 So 2d 188 (Fla App, 1989) (the only type of marital misconduct that is relevant to distribution of assets is the type that translates into greater financial need due to *depletion of financial resources).*

*Illinois:* See *In re Marriage of Getautas,* 189 Ill App 3d 148; 544 NE2d 1284 (1989) (the only misconduct that qualifies as *economic fault* is generally recognized in Illinois); *In re Marriage of O'Neill,* 138 Ill 2d 487; 563 NE2d 494 (1990) (economic fault is only that fault that leads to dissipation of assets and must occur while the marriage is undergoing irretrievable breakdown).

*Indiana:* See *In re Marriage of REG v LMG,* 571 NE2d 298 (Ind App, 1991) (the conduct of the parties during the marriage is irrelevant to the division of marital assets, *except as it relates to the disposition or dissipation of property).*

*Maine:* See *Eaton v Eaton,* 447 A2d 829 (Me, 1982) (marital fault, *at least insofar as it relates to noneconomic issues,* is an inappropriate consideration in property distribution). But see *Boyd v Boyd,* n 17 *supra* (marital fault is *not to be considered at all* in arriving at a property division).

*Minnesota:* See Minn Stat Ann 518.58(1), expressly excluding marital misconduct or fault from the consideration of the court, except insofar as waste of marital assets can be proven. This statute overruled *Peterson v Peterson,* 308 Minn 365; 242 NW2d 103 (1976), which held that fault could be considered in property disposition because the legislature, when it adopted no-fault divorce, had failed to enact proposed bills that would have removed fault from consideration.

*North Dakota:* See *Martin v Martin, supra,* p 770: "Without a determination of serious marital misconduct or *economic waste by one spouse,* we cannot direct substitution of an unbalanced division to the other spouse of property acquired during a long-term marriage." (Emphasis added.)

*South Dakota:* See SD Cod Laws 25-4-45.1, providing that "[f]ault shall not be taken into account with regard to the awarding of property or the awarding of child custody, *except as it may be relevant to the acquisition of property during the marriage* or to the fitness of either parent in awarding the custody of children." (Emphasis added.) This statute overruled *Swenson v Swenson,* 181 NW2d 864 (SD, 1970), which held that fault could be considered in property distribution.

sideration to evidence of *postseparation* fault.[20]

While eight states do permit courts to consider fault other than egregious or economic fault when dividing marital property,[21] none has a statutory

---

*Virginia:* See *Marion v Marion,* 11 Va App 659; 401 SE2d 432 (1991) (fault that *has an economic effect* upon the marital property or its value may be considered); *Aster v Gross,* 7 Va App 1; 371 SE2d 833 (1988) (although the Virginia property division statute provides that the court may take into account the circumstances and factors in bringing about the end of the marriage, *the only fault that counts in equitable distribution is economic fault*).

*West Virginia:* See 14 W Va Code 48-2-32, excluding the consideration of fault or marital misconduct "except for a consideration of the economic consequences of conduct."

[20] *Georgia:* See *Anderson v Anderson,* 237 Ga 886; 230 SE2d 272 (1976) (evidence of marital misconduct of either party in a divorce action based on the no-fault ground that the marriage is irretrievably broken is not admissible with regard either to alimony or the division of property between the parties).

See also *McEachern v McEachern,* 260 Ga 320; 394 SE2d 92 (1990) (evidence of *postseparation* adultery is relevant to the jury's determination of alimony and property division in Georgia to the extent that it prevented reconciliation).

[21] Alabama, Connecticut, Missouri, Nevada, Rhode Island, South Carolina, Texas, and Wyoming.

*Alabama:* See *Sides v Sides,* 677 Ala 39; 221 So 2d 677 (1969) (allowing fault to be considered); *Huggins v Huggins,* 57 Ala App 691; 331 So 2d 704 (1976) (allowed fault to be considered in an alimony award, construed statutory silence as adding no-fault grounds to the existing fault grounds for divorce, and read the alimony statute as applicable regardless of the ground for the divorce itself); *Miller v Miller,* 361 So 2d 577 (Ala App, 1978) (the court considered the fault of a husband in committing adultery); *Cooper v Cooper,* 382 So 2d 569 (Ala App, 1980) (the court considered the fault of a spouse in committing adultery).

*Connecticut:* See *Sweet v Sweet,* 190 Conn 657; 462 A2d 1031 (1983) (considered evidence of a husband's fault in connection with an award of alimony and division of marital property, though fault was not a consideration under the no-fault statute, statutes governing the division of property required the trial court to consider causes for dissolution of the marriage).

*Missouri:* See *Givens v Givens,* 599 SW2d 204, 205-206 (Mo App, 1980): "The trial court has discretion in the division of marital property and a just division does not have to be equal, particularly where one party has engaged in misconduct. . . . Among the factors to be considered by the court in distributing the marital property is the conduct of the parties during the marriage. . . . While marital misconduct may serve as a basis for the court in dividing the marital property, it 'should not serve as a basis for ordering excessive mainte-

scheme similar to Michigan's. Most[22] are distinguishable because, rather than eliminating traditional fault-based grounds, these states merely added a no-fault ground and thus have not removed fault from consideration.[23]

---

nance against, or inadequate marital property to, the offending spouse.' " See also *Hogan v Hogan,* 651 SW2d 585, 586 (Mo App, 1983) (the conduct of the parties is among the factors to be considered in the division of marital property).

*Nevada:* See *Heim v Heim,* 104 Nev 605; 763 P2d 678 (1988) (the concept of fault is consistent with the statutory requirement that property division and alimony awards be just and equitable, having regard to the respective merits of the parties).

*Rhode Island:* See *Conley v Conley,* 508 A2d 676 (RI, 1986) (the court was justified in assigning the marital home to the wife upon the basis of findings regarding the wife's conduct and contribution during the marriage and the husband's abusive conduct and his limited participation in preserving it).

*South Carolina:* See *Woodside v Woodside,* 290 SC 366; 350 SE2d 407 (1986) (the conduct factor becomes important in equitable distribution when the conduct of one party to the marriage throws upon the other party burdens beyond the norms to be expected in a marital relationship, and when this happens, such misconduct would affect property distribution).

*Texas:* See *Young v Young,* 609 SW2d 758 (Tex, 1980) (fault can be considered in property disposition). But the divorce at issue was based on one of the retained traditional fault-based grounds. It is therefore unclear what the Texas Supreme Court's position is regarding the consideration of fault in property distribution based on no-fault divorce. But see *Clay v Clay,* 550 SW2d 730 (Tex Civ App, 1977) (where in a divorce granted on a no-fault ground, the trial court, in dividing property, could consider the jury's finding that the wife was guilty of cruelty); *Hourigan v Hourigan,* 635 SW2d 556 (Tex App, 1981) (where a divorce is based on both no-fault and fault grounds, the court could consider the fault of one spouse in breaking up a marriage in making the property division).

*Wyoming:* See *Grosskopf v Grosskopf,* 677 P2d 814, 818 (Wyo, 1984) (because the Wyoming no-fault statute states that divorce may be decreed upon " 'the complaint of the *aggrieved* party,' " [emphasis added] this term necessarily implies that one party is to blame, and therefore the trial court could consider fault of respective parties together with all other facts and circumstances surrounding dissolution of a marriage for purposes of determining the division of property, alimony, and an award of attorney fees); *Igo v Igo,* 759 P2d 1253 (Wyo, 1988) (the court has discretion, in the division of property, to consider the fault of the respective parties).

[22] Alabama, Connecticut, Missouri, Rhode Island, Texas, and Wyoming. See n 16 *supra.*

[23] The majority distinguishes Idaho, Maine, New Jersey, Pennsylva-

In sum, at least twenty-five no-fault states, and one traditional fault-based state, preclude consideration of fault that constitutes a cause of the breakdown of the marital relationship in deciding on the distribution of marital property. Of these, six presently have statutory schemes similar to Michigan's—the legislatures adopted true no-fault divorce, eliminating traditional fault-based grounds, but did not amend property distribution statutes that are silent concerning the role of fault.[24]

Further, in two other no-fault states where courts had previously held, like the majority does today, that, under statutory schemes similar to Michigan's, fault other than egregious and economic fault could be considered, the legislatures subsequently amended the statutes expressly to provide that marital fault shall not be considered in dividing property.[25]

Of particular interest is the large number of states that have retained fault-based grounds for divorce but nevertheless preclude fault other than egregious and economic fault from consideration when dividing marital property.[26] Clearly, it is the position of a large majority of states that marital fault should not be considered when distributing property.

---

nia, and Rhode Island from Michigan on the basis that these states "merely added nonfault grounds to the traditional fault grounds such as adultery and desertion." *Ante,* p 153. That, however, cuts the other way. Many of the states that have merely added no-fault grounds to the traditional fault-based grounds still preclude their courts from considering fault when dividing marital property, at least if the divorce was granted on no-fault grounds. See ns 16-21.

[24] Arizona, California, Indiana, Iowa, Nebraska, and Wisconsin. See n 16 *supra.*

[25] Kentucky and Minnesota. See ns 17 and 19.

[26] Alaska, Florida, Georgia, Illinois, Kansas, Maine, New Hampshire, New Jersey, New York, North Dakota, Pennsylvania, South Dakota, Virginia, and West Virginia. See ns 16-20.

III

The majority stresses the failure of the Legislature, when enacting the no-fault statute, to amend the statutory provisions concerning the division of property to expressly preclude consideration of fault.[27] The property division provisions, however, say nothing about fault. It probably never occurred to any legislator, certainly not to the Law Revision Commission, that it was necessary to amend the property division provisions of the statute, as well as the provisions concerning the grounds for divorce, in order to accomplish the goal of eliminating fault as an issue in a divorce action.

If that had occurred to a legislator, it may very well have seemed beyond reasonable possibility that this Court would conclude that because fault was considered by the courts in the division of property in a pre-no-fault divorce, that judicial pronouncements in a fault regime would be thought to have survived to play a role in the division of property in a no-fault divorce. The legislator may have assumed, apparently incorrectly, that a court obliged to implement legislative intent could not so manifestly misread and fail to implement the plain, well-advertised purpose of the no-fault statute to eliminate fault as a cause of delay, as an impediment to working out suitable arrangements, and as a cause of pressure to make unfair and unreasonable concessions concerning property division.

---

[27] The majority's reliance (*ante,* pp 156-157 and ns 24 and 25) on the dictum of *Kretzschmar v Kretzschmar,* 48 Mich App 279; 210 NW2d 352 (1973), is without reëxamination by this Court of the legislative materials discussed in *Kretzschmar.* The legislative history there discussed says nothing, one way or the other, about the issue now before us.

IV

The conduct of the parties in the marital setting is surely relevant in deciding any issue concerning the custody of children. A judge may also properly consider that one of the parties squandered family money when deciding upon the division of what is left of family property. It defeats, however, as most courts have concluded, the legislative purpose to allow fault, including sexual infidelity, to be generally considered as a factor in the division of property.