*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AARON RICHARD DANIELS,

　　　　　Plaintiff-Appellant,

UNPUBLISHED
May 13, 2021

v

MELANIE NOEL JONES DANIELS,

　　　　　Defendant-Appellee.

No. 352249
Charlevoix Circuit Court
Family Division
LC No. 18-035726-DM

Before: MURRAY, C.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Plaintiff appeals as of right a judgment of divorce entered after a bench trial, challenging the trial court's property division, and raising two additional issues on appeal. We affirm.

Plaintiff contends that the trial court erred by denying his alleged request for an adjournment to seek a new attorney to assist him at trial.[1] We conclude that the issue is waived because plaintiff's argument that the trial court erred by denying a request for an adjournment to obtain new counsel ignores the fact that the court *granted* such an adjournment. In fact, two weeks before trial plaintiff had agreed that if he could not obtain new counsel, he would have to represent himself.[2] And, when trial then commenced, plaintiff asked for an adjournment so that custody and parenting time could be addressed during the bench trial—contrary to the parties' stipulation—but did not request an adjournment *to obtain counsel*. Although plaintiff later said, "I have not been given enough time to get adequate counsel," he did not make any request at this time for an adjournment to get new counsel and in fact, went on to state that he was representing himself because of a shortage of money. The issue has been waived. *Varran v Granneman (On Remand)*,

---

[1] Plaintiff's statement of facts does not contain a citation to any evidence in the record, while the trial court's decision is cited twice amongst the three arguments. Nor is there a mention of preservation issues. It is therefore not in compliance with MCR 7.212(C)(7).

[2] Plaintiff had terminated the services of at least three attorneys during the proceedings.

312 Mich App 591, 623; 880 NW2d 242 (2015) (quotation marks and citations omitted) ("Waiver is the voluntary and intentional relinquishment of a known right. One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights … .").[3]

Even if we review the issue under a plain-error framework, considering *all* the circumstances, including the sequence of events, plaintiff's history of firing his attorneys, and the evidence of his desire to refrain from incurring further attorney bills, the court did not clearly err by holding the bench trial when it did, and nothing occurred that seriously affected "the fairness, integrity or public reputation of judicial proceedings." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks and citation omitted).

Plaintiff also contends that the trial court erred in certain aspects of its division of property. In reviewing a property division in a divorce case,

> [t]he appellate court must first review the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts. But because we recognize that the dispositional ruling is an exercise of discretion and that appellate courts are often reluctant to reverse such rulings, we hold that the ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable. [*Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992) (footnote omitted).]

Plaintiff takes issue with the court's decision to apportion marital property using a 55%-45% split in favor of defendant, on the basis of plaintiff's fault. Fault is a proper factor for consideration in a property division, although it must not be given disproportionate weight. *Id*. at 158. In *Sparks*, *id*. at 161-163, the Court concluded that it was improper for the lower court to have fashioned a 75%-25% split primarily on the basis of a party's infidelity. The present case is far different. First, the lower court made a split much closer to equal than 75%-25%. Second, and more significantly, plaintiff's fault went far beyond mere infidelity. Indeed, the court devoted many pages of its opinion to the issue of plaintiff's physical abuse of defendant and clearly found it to be highly relevant.

The trial court accepted defendant as a credible witness and repeatedly referred to plaintiff's general lack of credibility, and we defer to the court's credibility findings. Defendant testified that plaintiff regularly physically abused her—he broke her ankle, strangled her, slammed her face on the floor, pulled her hair, and dumped a beer on her head. When she went to the hospital for her broken ankle, plaintiff would not leave her side because he did not want her to tell anyone what he had done. Defendant submitted photographs of her black eyes resulting from plaintiff's having strangled her in 2014, and submitted photographs of injuries from another violent

---

[3] With respect to his argument that the Friend of the Court should have provided him with materials regarding how to go about representing himself, plaintiff provides no authority for his apparent contention that the lack of provision of these materials somehow renders the trial court's divorce judgment subject to reversal. See *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998) (party cannot raise an issue without providing supporting authority).

incident in 2014; plaintiff had slammed defendant's head against a futon and pulled out some of her hair. After another incident during which plaintiff slammed defendant's head into something while plaintiff and defendant were camping, defendant "woke up in a giant pool of blood." Defendant submitted photographs of the aftermath of this incident as well. According to defendant, plaintiff told her that if the parties divorced, "he would kill himself and take [her] with him." In 2016, when defendant was eight months pregnant with the parties' child, plaintiff hit her in the head and also was abusive toward his older daughter; an audio recording was played of the incident. Defendant said that as a result of her experiences with plaintiff, she had "horrible nightmares that [she] live[s] with every single day."

The court's finding that it was plaintiff who was at fault for the breakup of the marriage was not clearly erroneous. *Sparks*, 440 Mich at 151. In addition, in light of the extremely egregious behavior of plaintiff toward defendant, it was not unfair or inequitable for the court to determine that a 55%-45% split of marital property was appropriate. *Id*. at 152.

Plaintiff next contends that it was improper for the court to award more marital property to defendant to satisfy other obligations owed to her by plaintiff. He argues that the court's conclusion that she would otherwise be unable to collect on these owed amounts was "speculative." But plaintiff was open about his money problems, indicating that he was trying to decide whether to pay an electric bill or save the money and put it toward getting psychological evaluations for the child-custody situation. The court's award of spousal support was going to put even more strain on his finances. In light of plaintiff's own testimony, it was not speculation for the trial court to conclude that he did not have enough cash to pay the amounts owed.

We also note that defendant would have been entitled to 55% of all marital property regardless, on the basis of the court's finding regarding fault (a finding that, as noted, was not improper). Accordingly, the court's "award" of the property in question to defendant was less valuable than it appears at first blush. Also, in *Sparks*, 440 Mich at 158-159, the Court stated:

> It is not desirable, or feasible, for us to establish a rigid framework for applying the relevant factors. *The trial court is given broad discretion in fashioning its rulings* and there can be no strict mathematical formulations. But, as we have recognized before, while the division need not be equal, it must be equitable. Just as the final division may not be equal, the factors to be considered will not always be equal. [(Citation omitted; emphasis added).]

The court was within its rights to conclude that defendant would not be able to collect on the amounts owed her and that, therefore, she should be given certain marital property in full. Moreover, plaintiff had withdrawn $49,000 in cash from the bank in the past year. He had recently spent quite a bit of money at restaurants and hotels. In addition, plaintiff had a well-paying job, whereas defendant had interrupted her career plan to care for plaintiff's older daughter and also stopped working at her $9.50-an-hour-job to care for the child that the parties had together. Given all the circumstances, we are not left with the firm conviction that the trial court's property division was inequitable. *Id*. at 152.

Plaintiff also makes a cursory argument about the custody and parenting-time situation for the parties' child. As plaintiff recognized in the trial court, this was subject to a stipulation at a

hearing on June 21, 2019, and thus custody and parenting time were not to be a part of trial.[4] But now on appeal, plaintiff is focusing his "custody" argument on the bench trial—not on his later requests to modify parenting time in certain respects; indeed, he refers to defendant's "presentation of [plaintiff's] abusive conduct," and this "presentation" occurred during the bench trial. The current issue has been waived because plaintiff agreed that the bench trial would not encompass the parenting-time and child-custody issues. *Varran*, 312 Mich App at 623.

    Affirmed.


                                            /s/ Christopher M. Murray
                                            /s/ Karen M. Fort Hood
                                            /s/ Elizabeth L. Gleicher

---

[4] After the bench trial, at a November 7, 2019 hearing, the court mentioned plaintiff's possible appeal, and plaintiff stated, "I've agreed to a stipulation," adding, "The Court of Appeals can't do anything about what has been stipulated regarding custody. . . . They can't. I mean legally they can't. I know that much." Plaintiff said that he was planning to appeal "other stuff."