*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARCIE GLOWACKI,

       Plaintiff-Appellant,

v

MARTIN GLOWACKI,

       Defendant-Appellee.

UNPUBLISHED
May 11, 2023

Nos. 359084; 361040
Oakland Circuit Court
LC No. 2017-856477-DO

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

In Docket No. 359084, plaintiff appeals as of right the trial court's opinion and order on remand apportioning the parties' tax liability equally between the parties. In Docket No. 361040, plaintiff appeals by leave granted the trial court's order denying her motion for relief from the parties' divorce judgment under MCR 2.612. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case is before this Court for the second time. In a prior appeal, this Court vacated in part the parties' August 30, 2019 judgment of divorce "to the extent that it requires plaintiff to pay 50% of the outstanding tax liability after the final spousal-support payment," also vacated the portion of a Uniform Spousal Support Order providing that spousal support is forever barred after 48 months, and remanded the case to the trial court "for reconsideration of the tax-apportionment issue." *Glowacki v Glowacki*, unpublished per curiam opinion of the Court of Appeals, issued June 10, 2021 (Docket No. 350691), p 8. This Court affirmed the judgment of divorce in all other respects. *Id.* This Court's prior opinion contains the following summary of the pertinent background:

> The parties married in April 2004. Although the parties did not have any children of the marriage, plaintiff had two sons from a previous marriage. Defendant was in medical school when the parties met. Before and during the early years of the parties' marriage, plaintiff worked in the aviation industry, selling seats of private planes for both her own business and another company. In 2007, after

-1-

defendant had obtained his medical degree, he established a medical practice known as the Sunrise Institute of Pain Management ("Sunrise"). Plaintiff contributed funds to assist in establishing this practice and she was involved in managing the practice until approximately 2011 or 2012, when she decided to remain at home to care for her two sons and the marital home.

Despite the fact that Sunrise generated revenues in excess of $1.5 million annually, the parties fell behind in their tax obligations to the state of Michigan and the United States government. At the time of trial in 2018, the parties owed approximately $2.7 million in outstanding taxes to the state of Michigan and the Internal Revenue Service (IRS). Although the IRS initially granted plaintiff innocent-spouse relief with regard to a portion of the tax liability, it later denied plaintiff innocent-spouse relief with respect to tax years 2011-2014 and 2016.

At trial, the parties attributed the tax debt to lavish spending, with each party blaming the other for the spending and financial decisions. Similarly, both parties took credit for the launch of defendant's medical practice. At the time of trial, defendant's income from his medical practice was approximately $1 million annually. Meanwhile, plaintiff claimed that she had to sell personal belongings and jewelry, and accept money from her children, to make ends meet after filing for divorce.

The primary issues at the bench trial involved the division of the marital estate, including apportionment of the tax liabilities, and determination of spousal support for plaintiff. The trial court awarded the parties' marital home in Michigan to defendant, and awarded the parties' vacation home in Colorado to plaintiff. The trial court found that both parties were responsible for the excessive spending that led to the tax liabilities, and held both parties equally responsible for repayment of the tax debt. [*Glowacki*, unpub op at 1-2.]

Although plaintiff had not worked for several years, the trial court found that she was capable of working and imputed an annual income of $30,000 to her. *Id*. at 2. The court awarded plaintiff spousal support for four years, in the amount of $30,000 a month for the first year, and $20,000 a month for the subsequent three years, subject to offsets for certain expenses and debts that plaintiff was responsible for paying. *Id*.

In the prior appeal, plaintiff argued that the trial court erred by holding her 50% liable for any outstanding tax liability after the 48 months of spousal support. This Court observed that the trial court focused "exclusively" on the parties' lavish spending habits to find that both parties should be held equally liable for the outstanding tax debt. *Glowacki*, unpub op at 7. This Court held that the trial court erred by not considering other relevant factors from *Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992), to fashion an equitable division of the marital estate. *Glowacki*, unpub op at 7. This Court stated:

Specifically, the trial court did not address the fact that plaintiff was 48 years old and had left the workforce in 2010, primarily to focus on developing defendant's medical practice, which had become financially successful. Additionally, aside

from comments to defense counsel in the context of addressing spousal support that plaintiff is "a woman that has lived off the income of her husband" over the duration of a 13-year marriage, cursory references to plaintiff having "no job" and no place to live when considering the potential sale of the Colorado home, and commentary regarding plaintiff's penchant for expensive purses, the trial court did not mention plaintiff's current life status, her necessities, or her personal circumstances.

Moreover, the trial court's decision to divide the rather significant tax debt equally between the parties did not address the parties' substantial income disparity or plaintiff's limited earning capacity compared to defendant's earning capacity. In considering an award of spousal support, the trial court found that defendant had an income of $1 million a year from his medical practice, which plaintiff helped establish. Conversely, plaintiff was not employed, and although the trial court had "no doubt" that she was able to work, it imputed an income to her of only $30,000. The trial court's ruling regarding apportionment of the tax debt did not contain sufficient explanation for this Court to determine on appeal whether imposing half the tax debt on plaintiff was fair and equitable. [*Glowacki*, unpub op at 7.]

In its decision on remand, the trial court discussed the *Sparks* factors and again held that the tax debt should be equally apportioned between plaintiff and defendant. The trial court also denied plaintiff's motion for reconsideration of that decision. Plaintiff now appeals the trial court's decision on remand in Docket No. 359084.

Plaintiff thereafter filed a motion for relief from the original judgment of divorce. Plaintiff noted that the judgment awarded her the Colorado home, but required her to refinance or sell the home within one year of entry of the judgment. Plaintiff sought relief from the refinance-or-sell provision, pointing out that she was unable to refinance the home because the IRS had filed tax liens against the property and the amount of the liens, combined with an outstanding mortgage debt and a line-of-credit debt, exceeded the equity value of the home, and thereby prevented her from refinancing the home. The trial court denied plaintiff's motion for relief from judgment. Plaintiff appeals that decision by leave granted in Docket No. 361040.

## II. DOCKET NO. 359084

Plaintiff argues that the trial court's decision on remand to apportion the parties' tax liability equally between the parties is inequitable and unfair and should be reversed. We agree.

## A. STANDARD OF REVIEW

With regard to a trial court's division of the marital estate in a divorce, our Supreme Court in *Sparks*, 440 Mich at 151-152, explained:

[T]he appellate standard of review of dispositional rulings is not limited to clear error or to abuse of discretion. The appellate court must first review the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, the appellate court must decide whether the dispositive ruling was fair and equitable in light of those facts. But because we recognize that the dispositional

ruling is an exercise of discretion and that appellate courts are often reluctant to reverse such rulings, we hold that the ruling should be affirmed unless the appellate court is left with the firm conviction that the division was inequitable.

"A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Swain v Morse*, 332 Mich App 510, 518 n 8; 957 NW2d 396 (2020) (citation and quotation marks omitted).

## B. ANALYSIS

In *Sparks*, our Supreme Court held that the benchmark guiding a trial court's division of the marital estate is that the division be equitable, rather than equal. *Sparks*, 440 Mich at 159. The Court further stated that a division of property is not determined by a specific set of rules, but that "certain principles of general application" are to be considered. *Id*. These factors were first recognized to be the source of the property, the contributions toward its acquisition, the length of the marriage, the parties' needs, the parties' earning abilities, and the reasons for the divorce. *Id*. at 159. The Court further recognized that these general factors have been "refined and expanded upon" by the Court, and additional factors may well be pertinent to the disposition of assets in the division of the marital estate. *Id*. The Court ultimately explained:

> We hold that the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. *Perrin v Perrin*, 169 Mich App 18, 22; 425 NW2d 494 (1988). There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Sparks*, 440 Mich at 159-160.]

The Court further instructed that a trial court is to weigh all of the relevant factors and "not assign disproportionate weight to any one circumstance." *Id*. at 158. And where any of the factors identified by the Court are relevant, the trial court bears the onus of making clear findings of fact. The Court specifically explained:

> But where any of the factors delineated in this opinion are relevant to the value of the property or to the needs of the parties, the trial court shall make specific findings of fact regarding those factors. It is hoped that this requirement will result in greater consistency and provide for more effective and meaningful appellate review. [*Id*. at 159.]

We recognize, as did the trial court, that the tax liability at issue is a joint obligation of the parties. Generally, marital debts are treated as negative assets and typically are allocated according to the same equitable principles that govern division of marital assets. See, e.g., *Butler v Simmons-Butler*, 308 Mich App 195, 209; 863 NW2d 677 (2014).

In its opinion on remand, the trial court in this case noted that plaintiff wife was 48 years old, that she did not testify regarding any physical health issues that affected her ability to work, that she at one point earned an annual income of $225,000 during the marriage, and that she had the ability to find employment in the private jet rental industry in which she had formerly worked. The trial court, citing its prior opinion, also observed that plaintiff had earned an 18% commission on amounts ranging from $35,000 in 2008 to $1,192,477.03 in 2005 while working to secure private jet rentals and transportation. The trial court found, on the basis of plaintiff's and another witness's testimony, and plaintiff's employment history, that plaintiff is "a savvy businessperson" and possessed "the capacity to earn a substantial living." The court reached this conclusion even though plaintiff had testified that her previous work dried up during the economic downturn in 2008 and 2009, and no one was flying on private jets at that time. Further, plaintiff testified that larger corporations had taken over the work that plaintiff used to do, and if plaintiff were to work for one of those companies, she would make substantially less money.

Accordingly, while the trial court indeed considered plaintiff's *prior income* in formulating its opinion that plaintiff had a substantial earning capacity, it did *not* comply with one of this Court's key directives, which was to compare plaintiff's earning *capacity* to the earning capacity of defendant, who was earning $1 million annually from his successful medical practice. *Glowacki*, unpub op at 7. Even accepting as accurate the trial court's findings that plaintiff at one point earned $225,000 annually during the marriage, and that she earned 18% commissions on income amounts as high as $1,192,477.03 while working in the private jet rental business, which would yield a before-tax income of $214,645.00, plaintiff's earning capacity still falls far short of defendant's earning capacity. Therefore, the trial court erred by not complying with this Court's clear directive to consider and contrast the earning capacity of each party. See *Sparks*, 440 Mich at 160. Moreover, considering plaintiff's age of 48 years and that she has not been employed since 2010, it is unlikely she would be able to earn even half of what defendant earns. This consideration weighs strongly against a conclusion that equal apportionment of the tax liability after the four-year period of spousal support payments ends is fair and equitable.

The trial court also was required on remand to consider "plaintiff's current life status, her necessities, or her personal circumstances." *Glowacki*, unpub op at p 7. In particular, defense counsel questioned plaintiff regarding deposits and withdrawals to and from her bank account in 2017, and she stated that she had borrowed money from her friends after defendant "walked out the door in January 2017." In October 2017, after plaintiff filed for divorce, she asked a friend if she could borrow $10,000 because defendant was refusing to provide her with money to pay her bills, and she had to sell her personal belongings to pay bills. Plaintiff further testified that she did not have any savings or investments left because she had invested them all in Sunrise. On redirect examination, plaintiff testified that she made deposits into her personal JP Morgan Chase bank account for $5,000 in June 2017 after selling her jewelry, and for $12,000 after selling her Rolex, and said she sold these items so she could pay her bills. Plaintiff's teenage son testified that since the summer of 2017, things had been very difficult for the family financially, and he sold a Rolex watch that defendant had gifted him for $8,000 to help plaintiff pay bills for the family. Plaintiff's son acknowledged that he regularly gave plaintiff money from his job as a lifeguard because she has "[l]imited money."

We acknowledge that conflicting evidence on many of these matters was presented at trial and there is evidence to support the trial court's finding that plaintiff's excessive spending habits

contributed to the enormous tax debt. For example, while plaintiff blamed defendant's mismanagement of Sunrise, both defendant and Jeffrey Freeman, a tax professional and attorney who assisted the couple with outstanding tax issues, provided testimony indicating that plaintiff's lavish spending contributed to the tax debt.

We also observe that plaintiff appears to have made little effort to secure employment consistent with her previously demonstrated abilities during the long life of this case. Despite that she had previously earned an income well into the six-figure range, the record reflects that she only recently obtained employment paying her at the rate of $25 per hour. While plaintiff appears to have struggled financially at the outset of this divorce proceeding, the very substantial spousal support she has received ($360,000 annually in the first year following the divorce decree, and $240,000 annually for the three years thereafter, subject to offsets) appears to have allowed her to subsist without working for a substantial period of time, only recently securing gainful employment but at a level well below her previous earnings. Plaintiff's current life status and personal circumstances strongly suggest that she is underemployed, after having remained unemployed for a substantial period of time.

We nonetheless conclude that under these circumstances, in which the trial court has imputed income to plaintiff of $30,000 and there is no evidentiary basis to conclude that plaintiff will be able to earn an income close to defendant's income, the trial court's decision to again apportion the $2.7 million tax debt equally between the parties is inequitable. Accordingly, we again remand this matter to the trial court with a directive that it more equitably apportion this joint obligation of the parties, while recognizing their actual earning capacities. Plaintiff retains substantial earning capacity that she has thus far failed to exercise, which the trial court may once again take into consideration when fashioning a more equitable division of the joint tax obligation.

### III. PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT

Plaintiff next argues that the trial court abused its discretion by denying her motion for relief from judgment. We disagree.

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for relief from judgment for an abuse of discretion. *Johnson v White*, 261 Mich App 332, 345; 682 NW2d 505 (2004). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Moore v Genesee Co*, 337 Mich App 723, 731; 976 NW2d 921 (2021).

### B. ANALYSIS

MCR 2.612 provides, in pertinent part:

**(C) Grounds for Relief From Judgment**.

(1) On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

(a) *Mistake*, inadvertence, surprise, or excusable neglect.

\*   \*   \*

(f) *Any other reason justifying relief from the operation of the judgment*.

(2) The motion must be made within a reasonable time, and, for the grounds stated in subrules (C)(1)(a), (b), and (c), within one year after the judgment, order, or proceeding was entered or taken. . . . [Emphasis added.]

Plaintiff first argues that the trial court erred by denying her motion for relief from judgment under MCR 2.612(C)(1)(a) even though the motion was filed outside the one-year time limitation from the entry of the judgment of divorce. We disagree.

The doctrine of "[e]quitable tolling, unlike judicial tolling, has a legal basis arising out of our common law, and it may be invoked [to avoid a limitation period] when traditional equitable reasons compel such a result." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 204; 747 NW2d 811 (2008). However, as Justice VIVIANO recently recognized in his dissenting opinion in *Browning v Buko*, ___ Mich ___ ; 979 NW2d 196, 199 (2022), the doctrine of equitable tolling has been "largely discredited" and courts are reluctant to apply the doctrine unless the situation is one in which the party asserting the doctrine was prevented "in some extraordinary way from exercising his or her rights" (citation and quotation marks omitted). We are not persuaded that the trial court erred by refusing to apply the doctrine of equitable tolling on the basis of plaintiff's first appeal. Although plaintiff could not move for relief from the divorce judgment while her prior appeal was pending, there was nothing preventing her from challenging the provisions of the judgment regarding refinancing or selling the Colorado home in the prior appeal. Plaintiff asserts that she did not do so because she was not opposed to refinancing and removing defendant's name from the mortgage and line-of-credit loan on the Colorado home, but was unable to comply with this directive only "because the [t]rial [c]ourt continuously erred in reaffirming the unjust division of [the] tax debt while at the same time enforcing the refinance-or-sell provision."

However, to the extent that the trial court's apportionment of the tax debt hindered plaintiff's ability to comply with the refinance-or-sale provisions involving the Colorado home, it would have been appropriate to challenge those provisions on that basis in the prior appeal. Therefore, we are not convinced that the present situation involves such extraordinary circumstances that plaintiff should be able to invoke the doctrine of equitable tolling to circumvent the one-year limitation period of MCR 2.612(C)(2). In any event, even if plaintiff were permitted to bypass the one-year limitation period, as explained more fully below, plaintiff cannot demonstrate that the trial court entered the judgment on the basis of mistake to justify granting plaintiff relief from the judgment.

Under MCR 2.612(C)(1)(a), "[a] party may be relieved from a final judgment, order, or proceeding on the basis of mistake, which mistake may be by the trial court." *Fisher v Belcher*, 269 Mich App 247, 262; 713 NW2d 6 (2005). We disagree with plaintiff that she was entitled to relief from judgment because the trial court mistakenly believed that her equity in the Colorado home would not be affected by any tax lien on the property.

At the close of proofs at trial, the trial court discussed the assets in the marital estate with the parties. Addressing the "best course of action" for the parties' Waterford condominium, the court observed that once the property was sold, the IRS lien on the property would need to be paid off. Similarly, when the court addressed the Colorado home, it noted "there is the liens [sic] on the property" and counsel for defendant stated that, with regard to any equity, "if there's $100,000 in equity, the government's taking it." The trial court then informed the parties that it needed an appraisal for the Colorado property, as well as "all the payoff information and the liens on that property." When the court inquired of defendant personally if he had a real-estate agent with whom he dealt, he informed the court that he did, and that the real-estate agent had worked with Freeman, the state of Michigan, and the IRS to obtain releases of the tax liens on the properties.

Moreover, as defendant correctly points out, the judgment of divorce expressly provides that if plaintiff fails to refinance the Colorado home within 12 months from the entry of the divorce judgment, defendant could list and sell the home and be reimbursed from the sale proceeds, or by deducting from his spousal support obligations to plaintiff all reasonable costs, expenses, and interest related to plaintiff's failure to refinance or sell the home. Specifically, the judgment of divorce provides:

> After all obligations, including, but not limited to, all liens, tax liens, (applied equally to each party's IRS and/or State of Michigan tax liability), mortgage, and line of credit, are paid on the property, any remaining net sale proceeds are awarded to [p]laintiff.

Because the record of the trial proceedings and the provisions of the judgment of divorce clearly indicate that the parties and the court were aware that the Colorado home was subject to IRS tax liens, and that such tax liens were required to be satisfied before plaintiff received any net sale proceeds, plaintiff's assertion that the trial court was mistaken regarding either the existence of the tax liens or whether those liens could leave plaintiff with no equity in the home is simply not persuasive. Therefore, the trial court did not abuse its discretion by denying plaintiff's motion for relief from judgment on the basis of MCR 2.612(C)(1)(a).

Finally, plaintiff argues that the trial court abused its discretion by denying her motion for relief from judgment under MCR 2.612(C)(1)(f). We again disagree. In *Heugel v Heugel*, 237 Mich App 471, 478-479; 603 NW2d 121 (1999), this Court explained the three requirements that must be met before relief from judgment may be granted under MCR 2.612(C)(1)(f):

> (1) the reason for setting aside the judgment must not fall under subsections a through e, (2) the substantial rights of the opposing party must not be detrimentally affected if the judgment is set aside, and (3) extraordinary circumstances must exist that mandate setting aside the judgment in order to achieve justice. *Altman v Nelson*, 197 Mich App 467, 478; 495 NW2d 826 (1992); *McNeil v Caro Community Hosp*, 167 Mich App 492, 497; 423 NW2d 241 (1988)[, lv den 434 Mich 852 (1990)]. Generally, relief is granted under subsection f only when the judgment was obtained by the improper conduct of the party in whose favor it was rendered. *Altman, supra*; *McNeil, supra*.

To the extent that the trial court concluded that relief could not be granted under MCR 2.612(C)(1)(f) on the grounds of mistake because plaintiff had asserted mistake in her request for relief under subsection (C)(1)(a), this Court stated in *Heugel*, 237 Mich App at 481, that a trial court may grant relief from judgment under MCR 2.612(C)(1)(f), "even where one or more of the bases for setting aside a judgment under subsections a through e are present, when additional factors exist that persuade the court that injustice will result if the judgment is allowed to stand." However, as we have already concluded, plaintiff has not established that the trial court was operating under a mistaken impression that the Colorado home was not subject to IRS tax liens when it awarded that property to plaintiff, subject to a requirement that she sell or refinance the home within 12 months of entry of the judgment.

We also disagree with plaintiff that defendant's substantial rights would not be detrimentally affected if this provision of the divorce judgment were set aside, given that defendant stated that his credit rating would be negatively impacted, as would his ability to purchase a home of his own. Further, extraordinary circumstances do not exist to warrant setting aside either the judgment of divorce in its entirety, or the provisions requiring plaintiff to refinance or sell the Colorado home. Such provisions are fairly common in divorce judgments, and while plaintiff may not be in a position to refinance or sell the home because of the IRS tax liens, this situation existed when the judgment was entered in August 2019, the record reflects that the trial court and the parties were well aware of it, and the circumstances are not so unique that the judgment should now be set aside. Plaintiff retains the ability to work with the IRS to subordinate the tax liens in order to allow her either to sell or refinance the Colorado home, as ordered by the trial court.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola

-9-